CHARLES W. STAHELIN v. JOSEPH M. SOWLE.

*Contract—Parol evidence—Rescission.*

1. Where a written memorandum or agreement does not contain the entire contract between the parties, prior and contemporaneous agreements and conversations may be shown in order to prove what the whole contract was.

2. Where a contract not required by the statute of frauds to be in writing to be binding rests partly in writing and partly in parol, the whole is regarded as a parol agreement, and may be proved by oral testimony, and the jury are to determine its terms from the whole testimony. In such a case the writing is competent evidence to prove the terms of the contract, so far as they are expressed therein, and may be regarded as admissions of the facts, and, indeed, the best evidence of the facts, so stated therein.

3. In a suit to recover damages for being prevented from performing a contract, it is incumbent upon the plaintiff to make out the contract alleged in his declaration, and the burden is upon him to show performance, or, in default, that the defendant wrongfully prevented such performance.

4. Where one party has departed from a special contract for the

delivery of specific articles from each to the other, the other party may treat it as rescinded; and if, by the terms of the contract, concurrent acts are to be performed, as to the delivery of property by one party and the payment of the price by the other, if either party refuses performance the other may treat the contract as abandoned, and justify rescission under it.

Error to Berrien. (O'Hara, J.)   Argued April 17, 1891. Decided July 28, 1891.

*Assumpsit.*   Defendant brings error.   Reversed.   The facts are stated in the opinion.

*Theo. G. Beaver* (*Marshall L. Howell,* of counsel), for appellant.
*George S. Clapp,* for plaintiff.

CHAMPLIN, C. J.   The declaration claims damages for being prevented from performing a contract.

The plea was the general issue, with a notice that the plaintiff had violated his agreement as mentioned and set forth in his declaration, specifying with particularity wherein he had failed to comply with the agreement, and alleging that—

"At the time the agreement was made the defendant had a large contract to furnish ties; that he purchased and owned the trees, logs, and timber on the 'Schaffer lot,' so called; that the same was purchased for the purpose of cutting up into ties; that the white-oak logs, trees, and timber thereon were contracted to plaintiff by defendant, to be cut and sawed up into ties and delivered to defendant; that plaintiff agreed to cut the same into ties for defendant; that plaintiff commenced to cut the said white-oak timber into lengths not suitable for ties, and thereby wasted the same; that plaintiff cut the white-oak logs, timber, and trees thereon, and manufactured the same into other kinds of lumber than for ties, and sold and converted the same to his own use, and deprived defendant of his profits and ties therein;" and that he is indebted to the defendant for the price and value of such trees and lumber; and that

by reason of his not fulfilling the contract, defendant has sustained damages, which he would recoup against any claim the plaintiff might establish upon the trial."

There were two contracts declared upon in the plaintiff's declaration. The first bears date the 5th day of November, 1886, in which plaintiff agreed to move his saw-mill on to Michael Houser's land, of Bridgman, Mich., and put the mill in good running order, and saw for defendant, and no other person, as long as defendant stocked the mill, for the sum of $3 per thousand feet for all logs except tie logs. Ties were to be sawed for the sum of eight cents apiece. The side boards of the tie logs were to be sawed free and edged up. Plaintiff agreed not to buy or offer to buy any white or burr oak logs or timber for a term of 18 months, if the defendant stocked the mill. The contract contained other provisions not material to state here. The work of putting in the logs, sawing, and all work for both parties, was to be done in a workman-like manner. The plaintiff agreed to put all the logs on the Houser lot from the woods on skids at the sum of 2½ cents for each 9-foot tie, and logs at the same ratio, 2½ cents for each 9 feet in length. The parties went on under this agreement, and the plaintiff put in a certain quantity of ties, for which he received his payment in full. He claims, however, that for the timber which he cut under that contract there was due him from the defendant $124. After this job was completed, they entered into another contract, as follows:

"LAKE TP., BERRIEN CO., MICH., March 18, 1887.

"We do hereby agree to sell to Charles W. Stahelin all the white oak timber that we buy in the neighborhood of his mill, except the Joshua Feather and Walton's, at what it costs us, and charge him at the rate of ten per cent. interest from date of payment for said timber; and also agree to pay him for all of the timber

made into M. C. R. R. ties, delivered on cars at Morris or Stevensville, if we can get the same rates at Stevensville as we have at Morris, 40 cents per No. 1, 20 cents per No 2, subject to the M. C. R. R. inspection; ties to be sawed six by ten, 9 feet long.

"J. M. SOWLE & Co."

The defendant, Joseph M. Sowle, was doing business under the name of J. M. Sowle & Co., and was engaged in getting out and furnishing ties to the Michigan Central Railroad. Upon the trial of the cause it appeared that the defendant, Sowle, purchased two parcels of land for $650, and it was estimated that the quantity of ties upon these parcels of land would be 6,500,—3,000 upon one piece, and 3,500 upon the other. The plaintiff testified that at the time the first contract was signed the defendant said to him:

"'I want you to crowd things. You are a pusher, and I want you to crowd it ahead, because I have got to have a certain amount'—I 'think 'he said—'of ties out,' so he would get his percentage, the 1st of January. The way I understood, he had three terms,—you might say three months, three distinct terms. He got in a certain amount every term; something that way.'

The witness further testified: ·

" Either a few days before or a few days after this paper [the second contract] was made, that Schaffer piece of timber was bought. I only knew it was bought by Sowle's saying so. Sowle came to my house, and called my attention. Told me he had been over the Schaffer piece. Asked whether I was willing to stand the price, —one piece $300, and the other $350. I knew what the timber was pretty well. I was willing to pay the price. Sowle said he would send the money right away. The money came; cannot say whether it was two or three days, or a week,—a short time. Mr. Sowle's foreman went over with me. Saw Mr. Schaffer. He showed us the lines to cut the timber. When I went in first, I went to making roads. We made a road diagonally through the piece, and then cut branch roads. I kept a memorandum of the business of cutting out the roads.

It cost me about $25. The other work cost me in the neighborhood of $25. I commenced cutting the timber off probably that very afternoon. Tucker and Schaffer showed us the line. I furnished to Sowle, at Morris Station, in the neighborhood of 1,000 ties. Did not all come from the Schaffer lot. I furnished 1,000 No. 1 ties, equal to $400."

The witness then testified tending to prove how much it cost to manufacture ties at his mill; what he paid cutters, hauling, and repairs at the mill, leather, oil, etc.; the number of teams he owned and hired, and what he had to pay for them. He also testified that his mill had a capacity and would cut in an average day's work 400 ties a day; that, after he had been at work some 13 days, he received a notification forom J. M. Sowle & Co., as follows:

" *Mr. Stahelin:* Please stop cutting and hauling. If you want to, saw what is in the yard cut at nine cents for No. 1, four and one-half for No. 2. Our contract is broken, and we have another mill to cut those logs.
"J. M. SOWLE & Co."

He further testified that he continued to cut after receiving this notice, until he was prevented by their putting a gate across the road and locking it up, and sending men there to prevent his further continuing the job.

The defendant testified in his own behalf as follows:

" My business is general lumbering. Have been in that business 42 years. Have been stocking mills in Berrien county. Know Mr. Stahelin. I made the contract mentioned here. Saw Mr. Stahelin first here in Berrien Springs in the month of October, 1886, in reference to lumber. I was cutting and shipping ties to the Michigan Central Railroad. He asked me to come down there and buy timber around his mill, and stock him up. I went down after that, and bought some timber, the latter part of October, three or four little pieces, and went to putting it into the mill at Bridgman. After I bought

the Houser lot, he came to me twice, and wanted to do that sawing. I came to the conclusion to let him have the job and made the contract. He went to work under the contract. I came there once in two weeks, pay-day. At the last settlement we settled all up square. The account was fetched in,—so much for ties, so much a thousand feet for what lumber there was,—and we settled up everything square. There was nothing said about this extra at that time. Not a word said about it from that day to this. He never asked anything or said there was anything wrong.

"*Q.* You may state whether you had contracts then with the Michigan Central Railroad.

"*A.* Yes, sir, I had contracts with the Michigan Central Railroad.

"*Q.* Did you state the fact to Mr. Stahelin? (Counsel for plaintiff objected.)

"*The Court:* When was that?

"*Counsel for Defendant:* At the time of making the second contract. (The court thereupon sustained the objection, to which ruling the defendant excepted.)

"*Defendant's Counsel:* I offer to prove the fact that it is part of the contract, and part of the agreement entered into between these two people, that Mr. Sowle had contracts by which he was to deliver at a specified time, large quantities of ties, and Mr. Stahelin, at the time he entered into that contract, knew of the fact, and that he was to run this lumber out, and deliver these ties, so that Mr. Sowle could meet that contract, and that was one of the considerations that entered into it. (The court refused the offer, and overruled the request, and refused the testimony, to which refusal and ruling of the court defendant excepted.)

"*Counsel for Defendant:* At the time of making this contract, did you have a conversation with Mr. Stahelin in reference to your being under obligations to deliver ties to any particular persons within a certain time?

"*Counsel for Plaintiff:* I object. (The court sustained the objection, and refused to hear the testimony, to which ruling the defendant excepted. * * * * *

"*Q.* Was there any arrangement as to the time when these ties were to be cut and delivered? (Counsel for plaintiff objected that conversations occurring at the time were not admissible. The court sustained the objec-

tion, and refused the testimony, to which ruling and refusal of the court the defendant excepted.)"

It will be noticed that the counsel for the plaintiff stated no reasons for his objections, except to the question last asked. For this fault the case might be reversed, but we have examined the record to find the reasons for the ruling of the court, and conclude that the testimony was excluded upon the ground that it is not permissible to contradict the terms of a written agreement by parol testimony, and that the court regarded the agreement signed by the defendant as containing all the terms of the contract entered into between the parties. In this we think he erred. There were five counts in the plaintiff's declaration, and, so far as any of them relate to the second contract, they do not treat it as a full and complete exposition of the intention of the parties to it. Indeed, upon its face it appears to be manifestly incomplete. In one count of plaintiff's declaration he calls it "a further supplementary agreement to the other," and avers that—

"Therein and thereby they, this plaintiff and said defendant, agreed together that this plaintiff should continue to use his mill to cut ties for said defendant, and that he should cut the same from land the timber on which was to and would be bought by said Joseph M. Sowle, who had the means wherewith to purchase the same, and who would buy timber in the vicinity of plaintiff's mill."

In another count, after setting up the substance of the first contract, the plaintiff continues as follows:

"That afterwards, intending to continue such contract, and make sure of the labor of this plaintiff, the said defendant agreed to buy other timber in the vicinity of plaintiff's mill, and did buy one piece of land of John Schaffer and another of Gottlieb Schaffer, and contemplated buying other timber, all in the vicinity of this

plaintiff, and that this timber should be resold to this plaintiff for the sum he paid, but on credit, and at ten per cent. interest, until such time as this plaintiff could reasonably pay the same with his labor; and agreed that, for all ties manufactured out of such timber, he would pay forty cents to this plaintiff at Morris Station, and would resell all such timber bought by him in plaintiff's vicinity, meaning for said eighteen months from November 5, 1886."

In another count he alleges that—

"Said Joseph M. Sowle further agreed with this plaintiff that he would buy the timber in the vicinity where was this plaintiff's mill, to stock his said mill, and that he would resell all such timber to this plaintiff on credit, charging this plaintiff ten per cent. interest, to be paid, if he chose, in ties to be furnished, and that he would pay this plaintiff at Morris Station or at Stevensville 40 cents for No. 1 ties, and 20 cents for No. 2 ties, delivered on the cars; the ties to be sawed six by ten inches, nine feet long. An exception was made of the timber of Joshua Feather and one Walton only. A paper in duplicate (Schedule B) was made between the parties, and signed by them; the said parties contemplating that for the ensuing thirteen months, and a little over, said Joseph M. Sowle would buy timber sufficient to stock the mill of this plaintiff, to be sawed into ties, and resell the same to this plaintiff, so that he could keep his mill in operation during all the time, and saw ties for said defendant, and furnish and sell the same to said defendant on the cars at Morris Station at the rate of 40 cents and 20 cents, as aforesaid."

In another count he alleges as follows:

"That thereafter, and on the 18th day of March, 1887, defendant requested this plaintiff to further agree with him, as is set forth in a writing signed by him, and delivered by him to plaintiff, of which Schedule B is a copy; that this plaintiff thereupon acceded to said request, and received said writing, so that it was agreed between them, as therein written, that plaintiff would continue to use his mill in the interest of defendant, and for him, and no one else, would manufacture ties, and sell them to defendant, delivered at Morris Station

and Stevensville, at 40 cents for No. 1 ties, and 20 cents for No. 2 ties; that plaintiff would buy from defendant, and take off his hands, all the timber, and said defendant would sell to plaintiff all the timber, which defendant would and could purchase in the vicinity for manufacturing, and that plaintiff would pay defendant therefor the amount of the purchase money of and for such timber, and ten per cent. interest upon the purchase price thereof, except one piece of Joshua Feather and one of one Walton."

It is therefore apparent, from the plaintiff's theory, that the written memorandum or agreement signed by defendant does not contain the whole of the contract between the parties, and it follows that previous and also contemporaneous agreements and talks may be shown in order to prove what the whole contract was. It is only where the contract is complete in itself, and shows upon its face that it embodies the terms of the agreement, that parol testimony which tends to vary or contradict the writing is excluded, as well as all previous negotiations and understandings. Where, however, a contract which is not required by statute to be in writing to be binding is partly in writing and partly parol, the whole is regarded as a parol agreement, and may be proved by oral testimony, and the jury are to determine from the whole testimony what the terms of the contract are. *Sheffield v. Page,* 1 Spr. 285; *Webster v. Hodgkins,* 25 N. H. 128; *Houghton v. Carpenter,* 40 Vt. 588; *Hope v. Balen,* 58 N. Y. 382; *Wentworth v. Buhler,* 3 E. D. Smith, 305; *Potter v. Hopkins,* 25 Wend. 417; *Crane v. Association,* 29 N. J. Law, 302; *Miller v. Fichthorn,* 31 Penn. St. 252; *Glenn v. Rogers,* 3 Md. 312; *Randall v. Turner,* 17 Ohio St. 262; *Kieth v. Kerr,* 17 Ind. 284; *Johnston v. McRary,* 5 Jones (N. C.), 369; *Perry v. Hill,* 68 N. C. 417; *Moss v. Green,,* 41 Mo. 389. The writing, in such a case, is competent evidence to prove the terms of the contract, so far as they are

expressed therein, and may be regarded as admissions of the facts, and, indeed, the best evidence of the facts, so stated therein.

In this agreement nothing is said of the agreement that Stahelin should continue to use his mill to cut ties for Sowle from land that Sowle was to buy in the vicinity. of the plaintiff's mill, as claimed in the first count of plaintiff's declaration; nor the purpose for which the second contract was made, and the other particulars, as claimed in the second count; nor the special agreement relative to buying timber to stock plaintiff's mill, and resell on credit, to be paid, if chosen, in ties, and that for 13 months and over defendant should buy sufficient timber to stock said mill, to be sawed into ties, and resell to plaintiff, so that he could keep his mill in operation all the time, and saw ties for the defendant and furnish and sell the same to him on the cars at Morris Station at 40 and 20 cents. Nor does the writing specify that the defendant shall buy timber, nor when; nor when the plaintiff shall pay; nor that plaintiff shall manufacture all timber suitable for ties into ties for defendant; nor when they shall be so manufactured, nor when delivered. Since it is apparent from the face of the writing, and also, as both parties claim, the writing does not contain the whole contract, the writing is not subject to the rules of construction relative to reasonable time which are applicable to contracts which are complete, and contain the whole agreement of the parties. Here parol testimony is admissible to prove any stipulation which is not expressly stated in the writing, and to supply all the terms of the contract, and, if a time was agreed upon verbally in which the ties should be cut and delivered, it was competent to show it as affecting the defendant's right to rescind. If defendant did not have the right to rescind, he did not have the

right to recoup. No person can recoup damages growing out of a contract which he has wrongfully prevented the other party from performing.

It was incumbent upon the plaintiff to make out the contract alleged in his declaration, and the burden of proof was upon him to show performance, or, in default, that the defendant wrongfully prevented him from performing; and while the burden of showing a sufficient cause to warrant him in rescinding the contract was upon the defendant, yet such defense could be shown under a plea of the general issue.

Where one party has departed from a special contract for the delivery of specific articles from each to the other, the other party may treat it as rescinded; and if, by the terms of the contract, concurrent acts are to be performed, as the delivery of property by one party and the payment of price by the other, if either party should refuse to perform his part of the contract the other may treat the contract as abandoned, and justify rescission under it. *Fletcher v. Cole*, 23 Vt. 114; *Goodrich v. Lafflin*, 1 Pick. 57; *Dubois v. Canal Co.*, 4 Wend. 285; *Hall v. Rupley*, 10 Penn. St. 231; *Moulton v. Trask*, 9 Metc. 577; *Derby v. Johnson*, 21 Vt. 17; *Hoagland v. Moore*, 2 Blackf. 167; *Goodman v. Pocock*, 15 Adol. & E. (N. S.) 576; *Webster v. Enfield*, 5 Gilman, 298; *Webb v. Stone*, 24 N. H. 288.

The claim on the part of the defendant was that the agreement was made with special reference to the contract which he had entered into with the Michigan Central Railroad Company to deliver ties to that company in a specified time, and the plaintiff was to get out and deliver the ties on this land to enable him to perform his contract, and the defendant was proceeding to fulfill his contract in this regard, and, in order to enable him to fill such contract, he did, on plaintiff's default, rescind the agreement with him, and obtain the sawing to be

done at another mill. He also claims that plaintiff was not manufacturing all the timber into ties which was suitable for that purpose. The defendant should have been permitted to prove what the terms of the entire contract were, and then it should have been left to the jury, under proper instructions, to find—

1. What the entire contract was;

. 2. Whether plaintiff wrongfully neglected or refused to perform the terms and conditions on his part; and, if they so find, then—

3. Whether defendant was justified, by reason of. plaintiff's violation of the contract, in rescinding the same. *Pontifex v. Wilkinson*, 1 Man., G. & S. 75.

If, under such instructions, plaintiff was entitled to recover, the charge of the court relative to plaintiff's damages laid down the correct rule.

For the error of the court in rejecting testimony tending to show the terms of the entire contract between the parties, the judgment must be reversed, and a new trial ordered.

The other Justices concurred.