## ORTMANN *v.* FLETCHER.

1. BARGAIN AND SALE—SHARES OF STOCK—TENDER.
   To entitle one who has bargained specific shares of corporate
   stock to recover the purchase price, he must have kept his
   tender of the stock good, and have been able at any time to
   deliver, upon demand, the identical shares sold.

2. SAME—PLEDGED STOCK—DELIVERY.
   The fact that stock is pledged is not necessarily inconsistent
   with the pledgor's ability to deliver it upon demand pursuant
   to bargain and sale.

3. EVIDENCE—CONTRACTS.
   The testimony of a party to a contract, that the other party
   knew when he executed the same that a different proposition,
   on the nonacceptance of which the contract was conditioned,
   had been given up, may be contradicted by anything tending
   to show that the proposition was under consideration at a
   later date.

Error to Wayne; Frazer, J. Submitted June 8, 1898.
Decided July 12, 1898.

*Assumpsit* by Charles L. Ortmann against George N.
Fletcher for the price of corporate stock bargained and
sold. From a judgment for defendant, plaintiff brings
error. Affirmed.

*De Forest Paine* (*C. A. Kent*, of counsel), for appellant.

*Dickinson & Thurber* and *Charles B. Warren*, for
appellee.

HOOKER, J. The parties to this action were interested
in a corporation known as the International Sulphite Fibre
& Paper Company, and the action was brought by the
plaintiff to recover the purchase price of 800 shares of the
stock of that company, which he testified that he tendered

to the defendant, according to the terms of the following writing, viz. (written on letterhead of International Sulphite Fibre & Paper Company):

"DETROIT, MICH., June 14, 1890.
"CHARLES L. ORTMANN.

"*Dear Sir:* We, the undersigned, hereby agree to purchase from you eight hundred (800) shares of Internat. Sulphite Fibre & Paper Co. stock, par value $20,000, now standing in your name on the books of the said company, for the sum of (fifteen) fourteen thousand dollars, on or before September first next. Payment to be made by us in our notes running to your order for 3 and 6 months, payable at the Mechanics' Bank, with interest at 6 per cent. per annum, upon the delivery of said stock to us. (The above change of the word 'fourteen' instead of 'fifteen' has been made before signing of this promissory letter.) Should said eight hundred shares of stock as per letter of June 13, 1890, to the Int. Sulphite F. & P. Co., proposing to purchase perpetual right to two digesters, be not utilized therefor.

[Signed]    "GEORGE N. FLETCHER."

Indorsed across paper:

"This agreement is hereby accepted, and shall sell this stock as per this letter.

[Signed]    "CHARLES L. ORTMANN."

The defendant denied the validity of this alleged contract, asserting that his signature was obtained with the understanding that it was not to be binding until several others signed it, who, together with himself, were having negotiations with the plaintiff in relation to his stock in said company, and that another arrangement was afterwards made covering all of the plaintiff's stock, which was reduced to writing, and signed by all upon the same day, thereby superseding the previous arrangement.

This writing provided for the sale by Ortmann, and the purchase by Weston, Dickinson, and the defendant, of 3,216 shares of stock, for a price stated, and continued as follows:

"It is further agreed by the said Ortmann, as part of the entire consideration for which said money is paid and

agreed to be paid, that he hereby relinquishes to and makes over to the purchasers any, every, and all claims against them, or either of them, and against said company, for dividends, earnings, or other claim or demand of any kind or nature, including the contract made by Fletcher, Weston, Field, and Dickinson for the sale to said Ortmann of $60,000 of par value of said stock, dated May 11, 1887. And it is further agreed, as part of the entire consideration inducing said payment of money and of notes to said Ortmann, that he, the said Ortmann, will sell and deliver to said parties for the said company, for a license to manufacture under the Mitcherlich process, in two digesters of two and one-half tons each per day, 800 shares of other stock in said company, and $2,500 in money, provided the Manufacturing Investment Company of New Jersey shall sanction such license, and to which sanction the parties pledge their best efforts in good faith to obtain; but, in case of failure to obtain said sanctions, and said transfer of said 800 shares shall not take place in accordance with this agreement for license, then for said 800 shares, and for all stock held by him, the said Ortmann agrees to and does hereby waive any and all claim of every name and nature against said company, and all and every stockholder thereof, for earnings or dividends on such stock, except subject to the liabilities of said company appearing by the books, or now outstanding in the notes of said company,—intending hereby to place said stock in the same relative positions as that of the original promoters of the company.    These presents and this transaction is an amicable adjustment and settlement forever of all differences between the parties, and every of them, and of all claims, one against the other or others, or against or for said company, whether such claim or claims are admitted or denied.

"Dated June 14, 1890.

[Signed]    "CHARLES L. ORTMANN.
"ISAAC M. WESTON.
"GEORGE N. FLETCHER.
"DON M. DICKINSON."

On the other hand, the plaintiff claims that the contract relied upon by him was made after this writing was made, and after Fletcher knew that the purchase of the two digesters had fallen through.

The plaintiff proceeded upon the theory that, having

tendered the stock to the defendant, he was entitled to recover the purchase price, and he requested the court to so charge by requests numbers 1 and 2. The court instructed the jury that, to entitle him to recover, it was not enough to show a tender, but that it must further appear that the plaintiff was at all times able and willing to deliver the specific stock sold. Error is alleged upon this instruction, and several cases are cited to sustain the proposition that the vendor of stock need not retain the identical shares tendered; but we think these cases are not applicable when specific shares are bargained. In *Allen* v. *Dubois*, *ante*, 115, it was held that a pledgor of stock was entitled to a return of the identical shares pledged, and we think the rule should include cases when specific shares are purchased, as in this case.

It is insisted by the plaintiff that it was not necessary that he be able at all times to deliver the stock tendered, and that it was sufficient if he was prepared to deliver it upon the trial, inasmuch as the tender was refused and no demand was made for the stock. Our understanding is that it was incumbent upon the plaintiff to keep the tender good,—that is, that he must have been able at any time to produce and deliver the identical stock sold, upon demand, as the property of the defendant,—it being upon the theory of the defendant's ownership only that the law permits the plaintiff to recover the purchase price. It does not follow that he was not able and willing to deliver the stock because it was pledged (*Stokes* v. *Mackay*, 147 N. Y. 232), and our understanding is that the judge so held, leaving it to the jury to find whether the stock, though pledged or sold, was subject to and within his control for the purpose of delivery under his contract with the defendant, so that he could have delivered it had he been called upon for it. This was an open question, inasmuch as Ortmann had given to Standish a bill of sale of the stock, and Anderson, his receiver, had practically done the same. The charge of the judge was therefore as favorable as the plaintiff had a right to expect.

Error is assigned upon a number of subjects in connection with the introduction of evidence. As heretofore stated, an important question of fact lay at the threshold of the case. The plaintiff claimed and testified that the defendant knew when he signed the alleged contract, on June 14th, that his proposition to use two digesters was given up. Anything that tended to contradict this was admissible. Thus, the books of the Sulphite Fibre & Paper Company tended to show that the proposition was under consideration at a later date. The letter written by the plaintiff, and dated October 16th, had a tendency in the same direction, in connection with testimony that negotiations to that end were still pending, and were afterwards continued to his (Ortmann's) knowledge. The court did not allow the jury to find that the plaintiff was bound to buy the digesters. He did allow them to consider the evidence relating to these negotiations, in connection with the writing sued upon, to aid them in determining whether that was a binding contract or not. The defendant stated that, as late as November 8th, he communicated with the president of the Manufacturing Investment Company in relation to this subject, at the request of Ortmann. In connection with this testimony, a copy of his letter was introduced, against objection. To the extent that it tended to show that the negotiations were still pending it was material.

We are of the opinion that the modifications of the plaintiff's first and second requests were proper.

The judgment is affirmed.

The other Justices concurred.