### PAINE v. PARKHURST.

(Circuit Court of Appeals, Sixth Circuit. May 20, 1913.)

No. 2,287.

1. PATENTS (§ 195\*)—CONTRACT FOR SALE OF PATENT—DELIVERY OF PATENT—"PATENT"—"TITLE DEED."

A "patent," like a "title deed," is a personal chattel, and a contract for the sale of the patent right may require the delivery of the original letters patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 272–274; Dec. Dig. § 195.\*

For other definitions, see Words and Phrases, vol. 6, pp. 5228–5231; vol. 8, p. 7748.]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. PATENTS (§ 195\*)—SALE—CONSTRUCTION OF CONTRACT—AGREEMENT TO DE-
LIVER ORIGINAL PATENT.**

A contract for the sale of a patent required the seller to forward the
"original patent papers," together with an assignment, to a bank for ex-
amination by the purchaser, who, if they were found regular, agreed to
accept them and pay the bank the agreed purchase price. *Held*, that
the delivery of the original letters patent was a material requirement of
the contract, and their tender by the seller a condition precedent to the
creation of any obligation on the part of the purchaser to complete the
purchase.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 272–274; Dec.
Dig. § 195.\*]

Error to the Circuit Court of the United States for the Western
District of Michigan; Arthur C. Denison and Clarence W. Sessions,
Judges.

Action at law by George H. Paine against J. Reed Parkhurst. Judg-
ment for defendant, and plaintiff brings error. Affirmed.

Colin P. Campbell, of Grand Rapids, Mich., for plaintiff in error.
B. Newton Savidge, of Reed City, Mich., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SA-
TER, District Judge.

SATER, District Judge. The plaintiff prosecutes error to secure
the reversal of a judgment rendered against him on a directed verdict.
The competent facts material to a decision of the case are as follows:

The Ideal Light & Fuel Company (hereinafter called the company),
operating under a license from the owners of patent No. 774,802, en-
gaged at Reed City, Mich., in the manufacture of a machine for pro-
ducing gas from gasoline for lighting and heating purposes. By suc-
cessive assignments the ownership of the patent had become vested in
one Wachs, of Cincinnati, Ohio, to whom the defendant, who was the
secretary and treasurer of the company, had on different occasions paid
the royalty which had accrued under the license. The enterprise prov-
ing unprofitable, the defendant interested some of his friends in a
project to organize a new corporation and take over and operate the
company's business. The procurement of capital was dependent on
acquiring ownership of the patent. Savidge, who it is conceded acted
for the defendant, went to Cincinnati to negotiate for it with the plain-
tiff. On September 15, 1910, plaintiff gave Savidge an option, where-
in he agreed to sell and deliver to him, his representatives or assigns,
at any time within 15 days from that date, the patent, all interest in
licenses granted thereunder, and his 85 shares of the company's stock.
The original patent papers and the assignment of them, duly executed,
together with the assignment of all licenses and the plaintiff's shares
of stock, were to be forwarded to the First National Bank of Reed
City (hereinafter called the Michigan bank) for examination by Sav-
idge, and to be delivered to him upon the payment of $3,142, in addi-
tion to the sum of $50 paid when the option was given. Upon the
acceptance by and delivery to Savidge or his assigns of the several
above-mentioned instruments the plaintiff was to discontinue, without

costs, a suit then pending in the United States Court for the Western District of Michigan, growing out of the claim of one Ball for 47 shares of the company's stock, and also to abandon all claims to have such stock issued; Savidge agreeing to procure the consent of the defendants in such case to its discontinuance without costs against the complainant. After the expiration of the option, the defendant, on November 2d, telegraphed the plaintiff:

"Will pay twenty-five hundred for property named in former option; wire answer; send papers to bank here."

Plaintiff on the same day answered:

"Under conditions of option for thirty-five hundred; no less."

This proposition was accepted, and plaintiff was directed to forward all papers at once, to which the plaintiff assented. On November 5th, plaintiff sent through a Cincinnati bank to the Michigan bank, subject to Savidge's examination, an assignment of the patent and all the other papers and instruments called for by the contract, excepting the original patent papers, and with them a draft on Savidge for $3,500, with the direction to return the draft and papers, if the draft be not paid by November 9th. Savidge promptly examined the several papers forwarded, but declined to accept them because the original letters patent were absent, and directed the defendant to instruct the Michigan bank to communicate that fact to the Cincinnati bank. The defendant returned the papers to the Michigan bank, reported to it his attorney's instruction, and notified it that he would not accept the papers as they were. About a month later the defendant, who had been absent some three weeks, learning that the patent had not been forwarded, and that the papers were still held by the bank, directed their return to Cincinnati. The organization of a new company had then been abandoned; but the Michigan bank had been instructed to pay the draft, in case the patent arrived in his absence, with a check which the defendant had left with it for that purpose. The defendant was not solicitous of acquiring the plaintiff's stock, but purchased it because he was required to do so to get the patent. At the time Savidge interviewed the plaintiff at Cincinnati and obtained the option, he knew that the plaintiff did not have the original patent papers, which it now appears had been lost. He examined a copy of them and learned that Wachs owned them, but failed in his effort to see him, on account of his absence from the city. There was no discussion at that interview as to their whereabouts, nor was there any subsequent inquiry concerning them on the part of Savidge, nor did he learn of their loss until about two months before the case came to trial. The plaintiff did not at any time endeavor to locate or obtain possession of them.

Following defendant's refusal to pay the draft, the plaintiff declared against him upon the common counts in assumpsit, including the money counts and a count for goods sold and delivered. In his bill of particulars he gave notice that he claimed the right to recover for the price of his stock and the patent. At the conclusion of the evidence the defendant's motion for a directed verdict was sustained on two grounds: (a) That the plaintiff's remedy was for breach of contract to

purchase; and (b) that the plaintiff in failing to tender the original patent papers had not fulfilled the requirements of his contract. There are several assignments of error, but the question of prime importance is: Did the contract between the parties require the delivery of such papers?

The plaintiff's insistence is that the language of his telegram of November 5th to Savidge merely referred to the condition contained in the option relating to the dismissal of the suit then pending in the federal court and not to the provision that the original patent papers (original letters patent) and the assignment of them should be forwarded to the Michigan bank for examination and delivery. This contention is unsound. Savidge's offer by telegram was for the whole of the property named in the option, with the direction that if it be accepted the papers should be sent to the Michigan bank. The same property was in contemplation when plaintiff submitted his counter proposition to sell for $3,500 under the condition of the option. That the patent and not the shares of stock in an unsuccessful corporation was the valuable part of the property under consideration was an apparent fact known to both parties. The acquisition of its full ownership was the moving cause of the purchase.

[1] In view of the fact that a record of the patent is preserved in the Patent Office, and that all its assignments are there recorded, the possession of the original letters may be comparatively unimportant; nevertheless, they are not valueless, but of intrinsic and substantial worth. The procurement of a copy of them would be attended with some inconvenience and expense. They are, like a title deed, a personal chattel. They are the evidence of their owner's exclusive right to the use of the invention and create a property interest in such invention. Marsh v. Nichols, Shepard & Co., 128 U. S. 605, 612, 9 Sup. Ct. 168, 32 L. Ed. 538. The rule is well settled that the person to whom title deeds belong may, on account of their value, maintain an action for their recovery (Wilson v. Rybolt, 17 Ind. 391, 79 Am. Dec. 486; Warvelle on Vendors, § 51; Snoddy v. Finch, 9 Rich. Eq. [S. C.] 355, 70 Am. Dec. 216); and the owner of a patent may doubtless avail himself of the same rule to obtain possession of the original patent papers. [2] The parties had a right to enter into an agreement for the transfer of the patent to be accompanied by the original letters; their delivery was made a condition precedent to the consummation of the sale. Their various assignments whereby the title became vested in Wachs were recorded, but it was not shown that any of them were acknowledged; if they were not, such assignments did not afford prima facie evidence of their execution. Section 4898, Rev. St. (U. S. Comp. St. 1901, p. 3387); Walker on Patents, § 495. Possession of the letters patent would, however, have afforded evidence as to whether they were properly executed by the proper officers or not, and, if properly executed, positive proof of their existence and prima facie evidence of the validity of the patent. Robinson on Patents, § 1016. The title to the patent being material, their presence among the papers forwarded, considered in connection with former payments of royalty to Wachs and the assignments of the patent, whether acknowledged or

not, under which he claimed title, would have created a forceful presumption of his ownership, and would have been an assurance, not only of his title, but more especially that Wachs had not assigned the patent within three months next preceding the transfer in question; for had it been assigned within that time to another person, such person as assignee would presumably have received such letters.

The plaintiff's counter proposition contains no suggestion of a purpose to exclude from the property enumerated in the option an item so important, or any other item. The defendant accepted the proposition thus made, with instructions to forward at once all of the papers that were to be delivered. That they were in fact, in so far as sent, forwarded, with draft attached, to the Michigan bank, is substantial proof that the plaintiff understood they were to be sent there. The plaintiff manifestly did under his contract precisely what he would have done under the option had it been accepted, for he has consistently maintained that the loss of the letters absolved him from either tendering or delivering them. The conduct of the parties shows that they understood that the only changes made by the telegrams in the terms of the option were in the purchase price and the time of performance, and the trial judge rightly held that the language of the plaintiff's telegram, "Under conditions of option for thirty-five hundred," meant under the terms of the option as modified in the two respects above mentioned.

Whether or not the provision of the contract for the delivery of the original letters patent was impossible of performance at the time the contract was made is immaterial; for if it were so, its impossibility, although known to the plaintiff, was not known to defendant, and it must, therefore, be held that the plaintiff intended to make himself absolutely liable. 9 Cyc. 627. He stipulated with particularity that he would sell and forward such letters for acceptance and delivery. If a subsequent impossibility of performance might have been foreseen by him, he was, nevertheless, not excused from the fulfillment of his promise, because he chose to bind himself absolutely. 9 Cyc. .627; Page on Contracts, § 1375; Jennings v. Lyons, 39 Wis. 553, 20 Am. Rep. 57. It was competent for him to contract to sell the patent, although he neither had the possession of nor the legal or equitable title to it. There was no legal necessity that he should be able to deliver it at the time he entered into the contract, for he might have subsequently acquired the control and possession of it before its delivery was required. If, when the time for performance came, he had obtained possession of it, and also the assignment of it by its lawful owner, and had made proper tender, he would have fulfilled his obligation. Rutland v. Brister, 53 Miss. 683, 686; 29 Am. & Eng. Ency. Law, 667; 1 Parsons on Contracts (5th Ed.) 556. His failure to do so put him in default, with all its attendant consequences. 39 Cyc. 1544.

In order to recover the purchase price, it was an essential part of his case to prove that the patent sold was tendered. By the terms of the contract concurrent acts were to be performed—the delivery of the property by the plaintiff and the payment of the price by the defendant—and as the plaintiff failed and refused to perform, the de-

fendant could properly treat the contract as abandoned and justify rescission under it. Stahelin v. Sowle, 87 Mich. 124, 49 N. W. 529; Ortmann v. Fletcher, 117 Mich. 501, 504, 76 N. W. 63; McCall v. Jacobson, 139 Mich. 455, 456, 102 N. W. 969; Smith v. Pickands, 148 Mich. 558, 560, 112 N. W. 122.

The conclusion reached renders unnecessary the consideration of other questions discussed by counsel.

The judgment of the court below is affirmed.