KIMBLE *v.* GILLARD.

1. FRAUD—EVIDENCE—VARIANCE—RELIANCE ON REPRESENTATIONS.
  In an action for fraud and deceit, plaintiff's admission, under oath, that the inducement which led him to make the contract in question was the fact that another person invested his money in the deal at the same time, and nothing else led him to consummate the purchase, constituted a fatal variance from the declaration, which set up the fact that plaintiff believed and relied on the representations of defendant.

2. SAME—REPRESENTATIONS—ELEMENTS OF ACTION.
  Fraudulent representations are only actionable if plaintiff relied on them: all material allegations of the declaration must be proved substantially as alleged.

3. SAME—CONSPIRACY TO DEFRAUD—JOINT PARTIES—EVIDENCE.
  Statements made by one of two joint defendants, not in the other's presence, are inadmissible to show fraud as to the absent party, unless there is evidence of a conspiracy to defraud. Evidence considered, and *held*, insufficient to establish a conspiracy.

4. SAME—CONSPIRACY TO DEFRAUD—EVIDENCE—ADMISSIONS.

And where the cause was tried against one of two joint defendants who had been served and had appeared, the other defendant, who had not joined issue and filed a plea in abatement that was undetermined at the time of trial, could not bind the codefendant by his admissions or statements.

5. EVIDENCE—CONSPIRACY.

Declarations of a co-conspirator are competent as to a party to the conspiracy, but are not admissible until the conspiracy has been shown by other testimony.

6. SAME—COMPROMISE—ADMISSIONS.

Alleged admissions made during negotiations for compromise are privileged and should be excluded.

7. CONTRACTS—RESCISSION—TENDER—INSUFFICIENCY.

Plaintiff, who claimed to have rescinded his purchase of a moving picture theatre for fraud, failed to establish a sufficient tender, upon a record showing that he operated the theatre for a week, closed and locked it and abandoned the property without taking any steps to preserve it, later making a tender of the keys to defendant in another town, having no knowledge where the property was or what had been done with it.

8. SAME—KEEPING TENDER GOOD—RESCISSION.

In order to make a valid tender rescinding a contract of purchase it is essential to keep the tender good and to be in position at the trial to re-deliver the property.

Error to superior court of Grand Rapids; Stuart, J. Submitted April 8, 1913. (Docket No. 1.) Decided October 1, 1913.

Case by William M. Kimble against Joseph R. Gillard and George W. Weeks for fraudulent representations. Judgment for plaintiff. Defendant Gillard brings error. Reversed.

*Smedley, Hall & Gillard,* for appellant.

*Cleland & Heald,* for appellee.

MCALVAY, J. A judgment was recovered by plain-

tiff in an action for damages for fraud against defendant and appellant and his codefendant, George W. Weeks. The action arises out of a sale of a vaudette located in Ann Arbor, Mich. It was commenced by declaration in the circuit court for Kent county November 5, 1910. Service was had on appellant November 9, 1910. On March 31, 1911, the declaration was served upon defendant Weeks at Detroit. The trial was commenced April 12, 1911, before the time for the appearance of defendant Weeks had expired. No appearance had been entered by him at the time of trial, and he was not produced as a witness. On April 13, 1911, a judgment was rendered against both of the defendants for $750. On April 14, 1911, Weeks appeared in the case and filed a plea in abatement, a demurrer to which was sustained. Later he filed a second plea in abatement, coupled with a plea of the general issue, under the statute. Plaintiff demurred to this plea, which demurrer has not yet been determined.

The facts in the case necessary to understand the somewhat complicated issues are as follows: Defendant and appellant started this vaudette, or moving picture show, in Ann Arbor in 1907 and continued until June, 1908, at which time James H. Gillard, his brother, came there to attend the university and purchased the property from him. Appellant then went to Marquette to practice law until December, 1909, when he removed to Grand Rapids and later became a member of the law firm of Smedley, Hall & Gillard. In March, 1910, James H. Gillard sold the property to a man named Gillman under a contract and moved to California. He gave appellant a power of attorney to care for his interest in the property with full power to sell. Later in the same year, this defendant being at St. Joseph, Mich., on business, he met the defendant Weeks, who at the time was a traveling salesman for the National Film

Company, with whom he was slightly acquainted and who knew of the Ann Arbor property. He was informed by appellant of the sale to Gillman and his default in payments. After some conversation as to the price and terms, he testifies that he told Weeks he could purchase it for $750; that Weeks indicated he might take another person into the deal with him. He next heard from Weeks by long distance telephone, who, having been informed that he was still ready to sell, stated that he had found a man ready to go in with him and pay $750, as appellant understood it; that appellant told him to bring the man over and he would make the deal. Gillard then went to Ann Arbor to investigate the condition of the property. Gillman had paid nothing after the first payment and he could get no money from him or any satisfaction, and he informed Gillman he intended to sell.

Two or three days after this trip, and on October 19, 1910, Weeks came to Grand Rapids with plaintiff for the purpose of purchasing the property. He telephoned this fact from the depot and asked the location of his office. Appellant told him and met them as they left the street car. Some negotiations were had at appellant's office during which he claims plaintiff was told by him that he could give possession within two weeks; that he expected to have trouble with Gillman, perhaps a lawsuit, but he would defend it without cost to him. Terms were agreed upon, and appellant, as attorney in fact for his brother, sold and transferred the property in question for the sum of $750 to the plaintiff by written bill of sale and drew an agreement between Weeks and plaintiff at their request that Weeks could acquire a half interest in the business later on certain terms. He also drew a promissory note for $200 from plaintiff to Weeks.

Plaintiff's version of this transaction is as follows:

That he was at Cadillac about the 18th of October, 1910, having sold his vaudette at Reed City, which he had operated for two years; he was out of business; that he met defendant Weeks, with whom he had an acquaintance because of his business, which was selling films to picture shows, and asked him if he knew of a moving picture show for sale; that Weeks told him of the Ann Arbor property, with which he said he was well acquainted; that it was a good paying business which could be bought from Mr. Gillard of Grand Rapids for $950; that he would put $200 into it and assured plaintiff it was all right; that he would at once go to Mt. Pleasant, telephone Gillard at Grand Rapids, and let plaintiff know about 6 o'clock; that at 3 o'clock Weeks telephoned him, saying: "I have purchased $200 on that place. I want you to meet me there (Grand Rapids) at 4 o'clock"—and further said he had wired the $200, and that if plaintiff did not take the property he would lose the $200; that by appointment plaintiff went to Grand Rapids October 19th and met Weeks at the depot, went to a hotel near by, and heard Weeks telephone to somebody and was allowed to state what he heard; that they then went to Gillard's office, where the papers were at once drawn by appellant. He claims that he said he did not like to take the place without seeing it; that both defendants said it was all right, and he said he would take it; that appellant said something about the amount of business it had done during some weeks previous, to which he paid no attention. He does not recollect that appellant said anything about transferring a good title, but there was talk about giving him possession. He says that he signed a note to Weeks for $200, but he did not know what was in the contract he signed with Weeks, who took it away. He did not get a copy of it there but later at Ann Arbor got from Weeks what he said was a copy. He paid

$750 to appellant at Grand Rapids when the bill of sale was made out and went to Ann Arbor October 24th following, where he met appellant, who gave him possession as he agreed; that he ran the business one week, until the 29th, when he locked the door of the vaudette with this property in it and left it there; that he made no provision for taking care of it, never saw it again, and did not know where it was at the time of the trial. The only tender that he made to appellant was on November 3, 1910, when he offered him the keys at Grand Rapids, which he refused to accept.

The principal errors assigned and relied upon by defendant and appellant will be considered. The first relates to the question of claimed variance between the averments of the declaration and the proofs. At the close of plaintiff's case this appellant moved for a directed verdict in his favor for the reason, among others, that there was a fatal variance between the declaration and the proofs. The motion was argued and denied.

The principal allegations in his declaration relied upon by plaintiff are:

*First,* that the defendant falsely represented he had a right to sell the property as attorney in fact for his brother and such sale was in violation of Gillman's rights; *second,* that defendant falsely stated to plaintiff the amount of the receipts of the business during three weeks preceding the sale; *third,* that defendant falsely stated that the property was paid for; *fourth,* that defendant told plaintiff that Weeks had paid him $200 on the purchase price, which he would forfeit unless Kimble paid the $750; *fifth,* that defendant met Weeks at St. Joseph and entered into a secret arrangement with him whereby Weeks was to induce plaintiff to buy this property, for which defendant was to allow Weeks for such service all of the purchase price over $750.

The declaration avers that all of these representa-

tions were believed and relied upon by plaintiff, and that he would not have purchased the property if they had not been made. The first and third allegations were taken from the jury by the court on the ground that there was no proof to sustain them.

After the motion referred to was made, an amendment to the declaration was allowed to cover one of its objections, that the declaration was fatally defective if a rescission of the contract was claimed, in that it showed no tender of the property to defendant. Plaintiff was then recalled and upon examination by his own counsel, after testifying as to the claimed tender, gave the following testimony:

"*Q.* What was it, Mr. Kimble, that induced you to enter into this contract to purchase?
"*A.* Mr. Weeks.
"*Q.* What about Weeks?
"*A.* I thought if he was willing to put his money into it, I was mine.
"*Q.* Was there anything else that led you to do it?
"*A.* Nothing, only that."

As far as the representations of appellant to plaintiff, relied upon in the declaration, whereby plaintiff claimed to have been defrauded, are concerned, the foregoing quotation from his testimony fatally varies from the declaration, and the court was in error in not so holding.

It is a well-settled rule, familiar and fundamental, that, in order to make misrepresentation actionable, there must be a reliance upon the representation. *Parker* v. *Armstrong,* 55 Mich. 176 (20 N. W. 892); 20 Cyc. pp. 108, 109, and cases cited.

All the material allegations relied upon in an action for damages for false representations must be proved substantially as alleged. The motion of defendant for a directed verdict should have been granted upon this ground.

Appellant contends that there is no evidence of a conspiracy in the record, properly admitted, which tends to support the fifth allegation, which relates to the conspiracy between appellant and Weeks entered into at St. Joseph. Our examination of the testimony received in evidence statisfies us that such contention is correct. Plaintiff relies upon the testimony of himself and his brother-in-law, Shoenhals, as evidence to show a conspiracy on the part of appellant. This testimony relates to conversations had with Mr. Weeks at Cadillac in the absence of appellant relative to the property in question and that it could be bought for $950. At the time this testimony was admitted, objection was made, and the court ruled that it was not relevant or material unless a conspiracy between appellant and Weeks was shown.

Another item of evidence relied upon to support this contention was testified to by plaintiff to the effect that Weeks had told him he put $200 into this purchase, and if plaintiff did not buy it at $750 he would lose his $200. This was part of a conversation between plaintiff and Weeks in the absence of appellant. This testimony was not admissible. The case was not at issue as to Weeks. His statements made in the absence of appellant could not bind him. The objection of the appellant should have been sustained to this testimony and it should have been excluded.

It was also not admissible for the further reason that it purported to be the admissions of a co-conspirator and no conspiracy had been shown. *Solomon* v. *Kirkwood*, 55 Mich. 256, 261 (21 N. W. 336, 338), in which Judge COOLEY said:

"The declarations of a conspirator may be evidence against his associates after the conspiracy is made out; but to receive them as proof of the conspiracy would put every man at the mercy of rogues. We find in this case no evidence of the conspiracy ex-

177 MICH.—17.

cept in the statements of Hollander; and, those having been erroneously received, there was nothing on that branch of the case to submit to the jury."

See 6 Am. & Eng. Enc. Law (2d Ed.), p. 868.

Plaintiff was allowed to testify also, over objection, that he heard Weeks at Grand Rapids over the telephone state something about $200, and afterwards when they arrived at the office of appellant he heard Weeks say to him, "Did you get that?" and appellant's reply that "he did."

The court on rebuttal also admitted, over objection of appellant, the testimony of one of plaintiff's attorneys detailing a conversation had between him and appellant before suit was commenced, claimed to be an admission tending to show this conspiracy. The objection made was that it was not rebuttal and that it was a conversation prior to bringing suit, had for the purpose of a compromise. The court sustained the first objection, whereupon plaintiff recalled appellant to lay the foundation for the testimony. He denied that he made the statement claimed and testified that whatever was said was expressly with reference to a compromise between the parties. This was not denied by the witness when upon the stand. The court refused to strike out the testimony. For the reason stated, it was inadmissible and should have been stricken out.

The testimony relied upon by plaintiff to show admissions, if taken as true, would not sustain the contention that a conspiracy was entered into by him to defraud plaintiff. No testimony was introduced in the case supporting the fourth averment of the declaration that appellant told plaintiff that Weeks had paid him $200 down on the purchase, which Weeks would forfeit if plaintiff did not pay $750. It therefore requires no consideration.

In a second motion, as well as in a third, made by appellant for a directed verdict, was included the

reason that there was no showing made by plaintiff that he was at any time in a position to return the property to appellant. These motions were both denied. The record shows that plaintiff went to Ann Arbor and was given possession of this property by appellant on or about the 24th day of October; that he kept it and conducted the business until the 29th, when he locked it up and left it. He testifies:

"I did not take any steps to preserve this property. I just abandoned it, just locked it up, and let it go; that is all."

He has never seen it since and did not know where it was at the time of the trial.

The tender claimed to have been made, as testified to by plaintiff, was not in law a tender of this property. It had at that time been abandoned by him, and there is no showing made that he was then in a position to deliver it to appellant. At the time of the trial he was not in a position to make the tender good, and his testimony shows he did not keep it good or have any possession of it after he abandoned it. A party who seeks to rescind a contract is required to make a tender and keep such tender good and must show at the trial that he is able to deliver the property to the defendant. *Ortmann* v. *Fletcher*, 117 Mich. 501, 504 (76 N. W. 63) ; *Potter* v. *Taggart*, 54 Wis. 395 (11 N. W. 678) ; *Jewett* v. *Petit*, 4 Mich. 508. The motion to direct a verdict for this reason should have been granted.

Other errors are assigned upon the admission and rejection of evidence, the charge of the court, and refusals to charge as requested by appellant, which do not require consideration.

For the errors pointed out in this opinion the judgment of the superior court against appellant is reversed, and a new trial granted.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.