## SMITH *v.* MARTIN ANTI-FIRE CAR HEATER CO.

*(Supreme Court, General Term, First Department.* June 3, 1892.)

1. CORPORATIONS—CONTRACTS BY UNAUTHORIZED OFFICER.

A manufacturing corporation cannot escape the effect of a contract made by its president on the ground that the by-laws vested authority to make such contracts solely in another officer, where knowledge of the by-laws is not brought home to the other party, and the act of the president in making it was within the apparent scope of his authority, and for a purpose directly connected with the company's legitimate business, and where the company has profited by it.

2. SAME—RATIFICATION.

Plaintiff, having made a contract with a corporation through its president, who was without authority, to solicit orders for a device manufactured by the company, submitted to a third person on behalf of the company, and over his signature as its agent, a proposition to furnish the device, which was accepted. The vice president, who alone was authorized to make contracts for the company, then called on such third person, and, after making some changes in the proposition and acceptance, marked them "Approved." *Held,* that the vice president ratified the contract made by the president with plaintiff.

8. SAME—EVIDENCE OF CONTRACT OF AGENCY.

Where a person claims that he made a contract with a company through its president to solicit orders for a device manufactured by the company, evidence that he

had cards printed describing himself as agent of the company; that he submitted to a third person a proposition signed by himself as agent to furnish the device, and notified the company of its acceptance,—is evidence of the existence of the contract.

Appeal from judgment on report of referee.

Action by Roderick H. Smith against the Martin Anti-Fire Car Heater Company for an accounting, and to recover for services rendered under a contract. From a judgment for plaintiff entered on the report of a referee, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

O. W. Johnson, (Daniel Whitford, of counsel,) for appellant. Benjamin S. Harmon and Charles F. Mathewson, for respondent.

O'BRIEN, J. This action was brought for an accounting and to recover from the defendant such amounts as might be found to be due to plaintiff as commissions for services rendered pursuant to a contract claimed to have been made between the plaintiff and the president of the defendant company. The latter was a domestic corporation engaged in the manufacture and sale of a certain device for heating railroad cars with steam drawn from the locomotive. The complaint alleged that in February, 1887, the defendant through its authorized agents entered into a contract with the plaintiff, by which it was agreed that the latter should endeavor to secure orders from different railroad companies for fitting up a trial train or trains with the device manufactured and sold by the defendant; for which services plaintiff was to receive 10 per cent. of the amount received by defendant for the fitting and equipping of the first or trial train, and 5 per cent. of all amounts thereafter received from the railroad company for the fitting up and equipping of additional cars and locomotives with defendant's invention or device.

The two questions most strongly urged upon this appeal, and to which alone we shall direct our attention, are: First, was any such contract made? and, second, if so, was it one binding upon the defendant as having been made by a duly-authorized agent? The testimony in brief shows that at the time of the making of the alleged contract the plaintiff and William Martin, the defendant's president, resided at Dunkirk, N. Y., where the chief office of the defendant was located. Intending to change his residence from Dunkirk to this city, the plaintiff, who was well acquainted with the officers of the defendant, and especially with the president, Martin, had an interview with him in respect to doing business for the defendant company, and as a result he testified that a contract such as alleged in the complaint was entered into. Though the making of any such contract was put in issue by the answer, which was supported by the testimony of Martin, the question was purely one of fact, and the conclusion reached by the referee is sustained by evidence showing the existence of a contract of the character claimed by plaintiff. The conduct of the plaintiff in having his cards prepared describing himself as the "Agent for the Martin Anti-Fire Car Heater Company," his thereafter calling upon the superintendent of the New York Central Company, and subsequently submitting to him a written proposition, signed as agent of the defendant, and his notification to defendant of the acceptance of the proposition, were facts strongly tending to support, and consistent only with, the view that plaintiff thought himself warranted to represent and act as the agent of the defendant. Impressed, no doubt, with the strength of such testimony, the defendant, to avoid the legal effect of the contract as claimed, insists that it was the individual contract of Martin, who did not assume to bind the defendant. We think upon this question the finding of the referee that Martin did assume to bind the defendant finds support in the evidence.

It is further urged, however, that Martin had no authority to bind the corporation; that, although he was the president, his duties related to supervi-

sion over the mechanical portion of the work; and that one Shaw, who was vice president of the defendant, was constituted by the by-laws the general agent to attend to all the details of the business.   On examination, we do not think that the by-laws relied upon as limiting the powers of the president are susceptible of the construction which the defendant would now seek to place upon them, nor do they in any substantial degree take away the powers ordinarily conferred upon the president of a corporation.   Be this, however, so or not, it was clearly shown that no knowledge of any limitation of the powers of the president under the by-laws was brought home to the plaintiff; but on the contrary, the entire testimony shows that a contract such as claimed to have been made was within the apparent scope of the authority conferred upon the chief executive officer of a manufacturing corporation.   We assent to the propositions of law, which are supported by numerous authorities, and which are relied upon by the appellant, that the president of a corporation has, by virtue of his office merely, no authority to contract for the corporation, and that one contracting with a corporation is bound to take notice of limitations contained in the by-laws on authority to contract for the corporation.   These, as general propositions of law, are correct; but they are subject to certain well-defined modifications, which have grown out of the necessity of broadening and giving validity to the acts of the executive officers of business and manufacturing corporations; some cases going to the extent even of holding such corporations to be bound by the acts of their agents whenever justice and fair business dealing would seem to require.   Unlike the rule as it prevailed at common law, corporations are now held to be affected with constructive notice, and implied assent, tacit acquiescence, and generally with the same legal and equitable considerations as affect the rights of natural persons.   So far as business, trading, and manufacturing corporations are concerned, it would be utterly impossible to transact their business if persons dealing with their officers and agents were hampered with the old rule that they were bound to know the exact extent of their authority to bind the corporation.   We think, therefore, that the first distinction to be observed in respect to the acts of officers relates to the nature of the corporation and the character of its business.

Another distinction to be observed in testing the question as to what acts would bind a corporation is to determine whether or not such acts are done or performed in connection with the purpose directly connected with the company's legitimate business.   As stated in Spelling's recent work on Private Corporations,(section 193:) "Usage and custom, and the necessities and conveniences of business, attach to certain corporate officers functions independent of any express authority from the board of directors.   In the exercise of these they are as much the agents of the corporation as if authority so to act were specially delegated.   The president, for instance, as chief executive officer of the corporation, may bind it by all acts the performance of which is incidental to his office.   When the president of a corporation performs an act pertaining to its business, a presumption exists in favor of the legality of the act."   See, also, Mor. Priv. Corp. (2d Ed.) § 538; Beach, Priv. Corp. § 202.   While it is impossible to reconcile all the cases with this view of the law, there being *dicta* in some of the cases, and others holding directly, that a president, by virtue of his office, has no authority to make a contract on behalf of the corporation, we think that most of them can be reconciled with the view here expressed, if we keep in mind the distinctions always to be made as to whether the contract in its nature is directly connected with the purpose of the incorporation, whether made in the usual course of the business of the corporation, and by an officer or agent acting within the scope of the apparent authority of such officer or agent.   The application of such principles of law to the contract found by the referee to have been entered into by the defendant corporation through its president presents

a case where the president, by acting within the scope of his apparent authority, made a contract relating to the business of the corporation, which the latter has acted upon to its profit, and by which in honesty and fairness it should be bound.

Were we, however, to go to the extent of holding that the limitations upon the powers of the president would have prevented the making of this contract, and that the only officer authorized to bind the corporation was the vice president, we do not think, upon the facts here presented, that the appellant can gain much comfort from such a contention. It is shown that after the plaintiff had entered into negotiations with the superintendent of the railroad company,—after a written proposition had been made and accepted,— the vice president called upon the superintendent, and having the facts of the written proposition and acceptance before him, upon examination, after some slight alterations therein, which in no respect changed the substance of the contract, he marked the same "Approved." If this was not a ratification of the acts of the plaintiff, and if such testimony cannot be regarded as proving acquiescence in the plaintiff's negotiation with the railroad company, it would be difficult to determine what else would be required. The vice president, with the knowledge that the plaintiff was holding himself out as the agent of the defendant, approved of the contract substantially as made by the plaintiff with the railroad company; and there is evidence to support the finding of the referee that at the time of accepting the order from the railroad company and equipping the trial train the defendant's managing officers knew that the order had been obtained through the efforts of the plaintiff, claiming to act as the agent of the defendant. Upon this appearing, even assuming that the president of the defendant was not authorized to make the contract with plaintiff, yet the corporation, in availing itself of plaintiff's services thereunder, has adopted and ratified the same, and should pay for the services according to the agreement. Upon an examination of the record, therefore, we see no reason to interfere with the conclusion reached by the referee, which is consonant not only with justice and equity, but with well-settled principles of law. We are of opinion, therefore, that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concur in result.