38 L.R.A. 804

107 447
109 51
107 447
111 289
107 447
e128 626

AMERICAN MIRROR & GLASS-BEVELING CO. *v.* BULKLEY.

1. EQUITY PRACTICE—CASE HEARD ON BILL AND ANSWER.

An answer to a bill in equity is to be taken as true, where the cause is heard on bill, demurrer, and answer.

2. SAME—CONSTRUCTION OF PLEADINGS.

A general allegation in a creditor's bill against the stockholders of an insolvent corporation, that a large number of subscriptions to the capital stock were not paid at all, while some were paid in worthless patent rights and some in goods at fictitious prices, is sufficiently met by an averment in the answer of an individual stockholder that he has fully paid for the stock subscribed by him.

3. CORPORATIONS—LEGALITY OF ORGANIZATION—ESTOPPEL.

Where an association has been recognized by the public authorities as a duly-organized corporation, and has done business and filed its annual reports as such, creditors who have dealt with it and brought suit against it as such corporation cannot attack its corporate existence, and hold its stockholders liable as partners.

4. SAME—UNISSUED STOCK—LIABILITY OF STOCKHOLDERS.

A stockholder who has paid for his stock in full is not personally liable to the creditors of the corporation for its unissued stock, in the absence of a showing that he subscribed for or purchased his stock in furtherance or with knowledge of a fraudulent scheme to organize and carry on an illegal corporation.

Appeal from Kent; Adsit, J. Submitted December 3, 1895. Decided December 17, 1895.

Bill by the American Mirror & Glass-Beveling Company to establish the individual liability of the stockholders in the Michigan Cabinet Company for the payment of its debts. From a decree sustaining the demurrer of the defendant Abby A. Bulkley, complainant appeals. Affirmed.

*Wesselius & Corbitt,* for complainant:

A corporation, in the absence of legislative permission, has no legal right to begin its business operations and incur debts until the entire capital stock fixed by its charter has been subscribed, and, in case of failure to observe this requirement, the corporators are individually liable to the creditors of the corporation to the amount of the unsubscribed stock. Beach, Priv. Corp. § 118; Mor. Corp. §§ 408, 823, 824; Thomp. Corp. § 2969; *Haslett* v. *Wotherspoon,* 1 Strob. Eq. 209; *Burns* v. *Beck,* 83 Ga. 471; *Association* v. *Walker,* 88 Mich. 62; *Hawes* v. *Petroleum Co.,* 111 Mass. 200.

Complainant did not, by obtaining judgment against the corporation, waive its claim against the defendant stockholders. Cook, Stockh. §§ 219, 222; Beach, Priv. Corp. § 698; Mor. Corp. §§ 899, 900.

*Champlin & Stone,* for defendant Bulkley:

At the common law, there is no individual liability of members of a corporation for corporate debts beyond the enforcement of their agreed contributions to the capital stock. Beach, Priv. Corp. § 143; *Terry* v. *Little,* 101 U. S. 216; *U. S.* v. *Knox,* 102 U. S. 422; *Manufacturing Co.* v. *Bank,* 6 Rich. Eq. 227.

A failure to comply with all of the statutory requirements in the organization of a corporation does not render the corporators liable to creditors as copartners. *Fay* v. *Noble,* 7 Cush. 188; *Bank* v. *Almy,* 117 Mass. 476; *Bank* v. *Walker,* 66 N. Y. 424; *Salt Co.* v. *Heidenheimer,* 80 Tex. 344; *Stokes* v. *Findlay,* 4 McCrary, 205; *Society Perun* v. *Cleveland,* 43 Ohio St. 481.

A subscription of the whole amount of the capital stock is not a condition precedent to the legal existence of a corporation, unless it is made such in terms by the governing statute. Thomp. Corp. §§ 246, 2988; Cook, Stockh. § 243; *Johnson* v. *Kessler,* 76 Iowa, 411; *Sweney* v. *Talcott,* 85 Iowa, 103; *Thornton* v. *Balcom,* Id. 198; *Childs* v. *Smith,* 55 Barb. 45; *Manufacturing Co.* v. *Moring,* 15 Gray, 211; *Turnpike Co.* v. *Valentine,* 10 Pick. 142; *Bank* v. *Investment Co.,* 74 Tex. 421; *Massey* v. *Building Association,* 22 Kan. 624.

Complainant, having dealt with the defendant company as a corporation, is estopped to deny its legal existence. *Swartwout* v. *Railroad Co.,* 24 Mich. 394; *Monroe* v. *Railroad Co.,* 28 Mich. 274; *Bank* v. *Stone,* 38 Mich. 779; *Manufacturing Co.* v. *Stuart,* 46 Mich. 482; *Manufacturing Co.* v. *Run-*

*nels,* 55 Mich. 130; *Jones* v. *Building Association,* 77 Ind. 340; *Pochelu* v. *Kemper,* 14 La. Ann. 308; *Cresswell* v. *Oberly,* 17 Ill. App. 281; *Salt Co.* v. *Heidenheimer,* 80 Tex. 344; *Snider* v. *Troy,* 91 Ala. 224; *Cory* v. *Lee,* 93 Ala. 468; *Stout* v. *Zulick,* 48 N. J. Law, 599; *Bank* v. *Padgett,* 69 Ga. 159; *Bank* v. *Palmer,* 47 Conn. 443; *Blanchard* v. *Kaull,* 44 Cal. 440; *Thornton* v. *Balcom,* 85 Iowa, 198; *Cochran* v. *Arnold,* 58 Pa. St. 399; *Eaton* v. *Aspinwall,* 19 N. Y. 119; *Powder Co.* v. *Sinsheimer,* 46 Md. 315.

GRANT, J.    The bill sets up the articles of association of the Princess Dressing-Case Company in full; alleges that said corporation began to do business; the amended articles by which its name was changed to the Michigan Cabinet Company, and its capital was increased to $100,000, and its shares to 10,000; the annual report; that said corporation did business until September, 1893, and created a large indebtedness; that at that time it gave a trust mortgage, and ceased to do business; that, at the time it gave said mortgage, all of its capital stock was not subscribed for, and had not all been paid in in money, but some had been paid for in nearly worthless patent rights, and not to exceed one-third of the capital stock had been subscribed for in any manner; that the annual report was not true; that, at the time said mortgage was given, said Michigan Cabinet Company was indebted to the complainant in the sum of $570; that on December 19, 1893, the complainant obtained a judgment against the said Michigan Cabinet Company in the circuit court for $570.33 and costs, for which sum it had execution, but that said execution was returned *nulla bona;* that the said Michigan Cabinet Company was not legally organized to do business; that the said stockholders became individually liable thereby for its indebtedness; that, by means of the premises, defendants became indebted to the complainant for the indebtedness of said Michigan Cabinet Company up to $100,000, or such part thereof as shall be required to pay said complainant;

prays answers to the several interrogatories based on said averments; asks for the appointment of a receiver to collect debts of said Michigan Cabinet Company for the creditors; that the stockholders may be decreed individually liable for said indebtedness. This defendant, Abby A. Bulkley, answered that, long before the said Princess Dressing-Case Company became liable to said complainant, she had paid the said Princess Dressing-Case Company the full amount of her subscription; and to the remainder of said bill she demurred generally, and the demurrer was sustained.

1. This case is before us on bill, demurrer, and answer. The original articles of association were executed in December, 1889, and were duly filed in the offices of the secretary of state and county clerk of Kent county. The corporation immediately entered upon its business, and carried it on until September, 1893. Meanwhile, in October, 1892, it amended its articles by increasing its capital stock to $100,000, which amendment was also duly filed in the proper offices. It was recognized by the public authorities as a duly-organized corporation; did business and made and filed its annual reports as such. The complainant dealt with it and brought suit as such. The complainant cannot now attack its legal existence, and hold the stockholders liable as partners. *Swartwout* v. *Railroad Co.*, 24 Mich. 389; *Merchants', etc., Bank* v. *Stone*, 38 Mich. 779. Many authorities are cited in these two cases. See, also, *Pochelu* v. *Kemper*, 14 La. Ann. 308; *Cresswell* v. *Oberly*, 17 Ill. App. 281.

2. It is alleged in the bill that "a large amount of what was subscribed for was not paid for in any manner, and some of the said subscriptions for stock had been paid for in patent rights, which were nearly worthless, and some paid for in goods at fictitious prices." There is no allegation to connect the defendant Bulkley with any of these supposed fraudulent transactions. The complain-

ant has chosen to accept the issue as made by the pleadings. Her answer must therefore be taken as true. By this it appears that she has paid the full amount of her stock. There being no actual fraud charged against her, the decree dismissing the bill as to her was correct, unless she can be held liable for the entire amount of the unsubscribed stock, or sufficient thereof to pay the debts of the corporation.

3. The defendant corporation was organized under Act No. 232, Pub. Acts 1885, as amended by act No. 170, Pub. Acts 1889. The act does not provide that the entire capital stock shall be subscribed as a condition precedent to its organization and the right to carry on business. It provides that 10 per cent. of it shall be paid in, and this requirement was fulfilled when that amount was paid in by the actual subscribers. Mrs. Bulkley was not a director, and is not shown to have had anything to do with the management of the business, or with the alleged fraudulent annual report made by the three directors in February, 1893. There is no allegation that she knew that the entire capital stock was not to be subscribed, or that there was any understanding or agreement that they should enter upon and carry on the business without the subscription of the entire stock. This is not a contest between the corporation and the stockholder to enforce a subscription or assessment, as was the case in *International Fair, etc., Ass'n* v. *Walker*, 88 Mich. 62.

In *Haslett* v. *Wotherspoon*, 1 Strob. Eq. 209, the stockholders were held liable because they had represented that the entire capital stock of $60,000 was subscribed and paid in, whereas, in fact, only about half that sum had been paid in. This case was commented on in *South. Carolina Manfg. Co.* v. *Bank of South Carolina*, 6 Rich. Eq. 227. It was there held that stockholders incur no personal liability except as prescribed by the terms of the charter. Speaking of the power of the corporation to

enter upon business before a certain amount of capital stock has been paid in, and the liability of individual stockholders, the court say: "In the absence of such prohibitory provision, to render each subscriber responsible for the payment of the whole amount of the capital stock would not only ingraft a new liability, but be fatal to the establishment of any such institutions."

In *Burns* v. *Beck*, 83 Ga. 471, two parties undertook to form a corporation. All the stock had not been subscribed for, or the minimum amount paid in. They held the corporation out as duly organized, and then made a fraudulent assignment of the corporate property. The court say: "Taking the allegations of the bill as true, they were connected with the corporation through fraud at both ends of its career, and throughout the whole intervening space." The parties held liable were the sole organizers of the pretended corporation, and perpetrators of the fraud.

In *Hawes* v. *Petroleum Co.*, 111 Mass. 200, no stock had been issued, and only one of the members had agreed to take a certain number of shares. It was held that they were the joint owners of the entire capital stock, and, by the express terms of the Massachusetts statute, were jointly and severally liable for the corporation debts.

The above are the principal cases cited by the complainant in support of the liability of Mrs. Bulkley. They are not in point. The sole question presented to us now is, can a stockholder, whose ordinary contract is to pay the par value of his share, and who has paid it, be held liable to creditors of the corporation for its unissued stock, without any allegation or showing that he either subscribed for or purchased his stock with knowledge or in furtherance of a fraudulent scheme to organize and carry on an illegal corporation? We find no authority, and we see no reason, to support such a proposition. It seems to us contrary to the principles of justice and

equity. We pass no opinion upon a case where parties have launched such a corporation intentionally, and with a full knowledge of the situation. That case is not before us.

It follows that the decree must be affirmed, with costs.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. MONTGOMERY, J., took no part in the decision.