Motion to dismiss appeal allowed conditionally September 16;
appeal reinstated September 23, 1930; argued on the
merits March 24; reversed April 14, 1931

## DOEHLER ET AL. *v.* LANSDON ET AL.

(291 P. 392, 298 P. 200)

*P. J. Gallagher* and *John F. Conway,* both of Portland, for appellant.

*Richards & Richards,* of Portland, for respondent.

COSHOW, C. J. Respondents, who are plaintiffs, have moved the court for an order dismissing the appeal taken by defendants in the above-entitled matter. The motion to dismiss is based on the claim that the undertaking is insufficient in several particulars: First, that the liability of appellants and their surety is limited therein. Second, the undertaking is not sufficiently executed. Third, authority for subscribing the name of the surety is not shown.

■ First, the undertaking is in the usual form except that the word "damages" is omitted from the specific statement of appellants' obligation which reads: "That the said appellants will pay all costs and disbursements which may be awarded against said defendants on the appeal." The undertaking in that particular is insufficient: *Steed v. Cavanaugh,* 80 Or. 62 (151 P. 968).

■ Second, the undertaking is described as follows:

"L. Landson and Mary M. Landson,
 "Defendants and Appellants,
 "By: P. J. Gallagher, their attorney.
"American Surety Company of New York,
"By: W. A. King, Resident Vice-President,
 "Surety.
"Attest: N. Cody,
 "Resident Asst. Secretary."

It is not necessary that the undertaking should be signed by the appellants: *O'Connor v. Towey,* 70 Or. 399, 401 (140 P. 625). Consequently, if it be conceded that an attorney does not have the authority to bind his client by signing an undertaking on appeal for them, the objection that the undertaking is not prop-

erly executed is immaterial. The liability of the surety is not diminished or limited by the attorney signing the names of the appellants thereto.

Third, the signature of the surety was made by W. A. King, resident vice president, and attested by N. Cody, resident assistant secretary. The proper place and time for excepting to the surety was in the circuit court within five days after the undertaking was served on defendants. It is now too late to take exception to the surety on the undertaking. The objection to the surety as made by respondents amounts simply to an exception to the sufficiency of the surety. It is executed in the proper form and if the respondents were not satisfied with the surety they should have taken exception in the circuit court.

The motion to dismiss the appeal will be allowed unless within 10 days after the date of this decision appellants file a sufficient undertaking.

ON THE MERITS

*P. J. Gallagher,* of Portland, for appellants.

*Oren Richards,* of Portland (Richards & Richards, of Portland, on the brief), for respondents.

RAND, J. On April 15, 1928, plaintiffs loaned $3,500 to the Peninsula Electric Company, a domestic

corporation doing business in Portland, for which the corporation executed and delivered to plaintiffs its promissory note and a chattel mortgage to secure payment thereof. Both instruments were executed in the name of the corporation and in its behalf by L. Lansdon, one of the defendants herein, as president. Later, an action against the corporation was brought in the circuit court for Multnomah county by other creditors and the mortgaged property was attached. Plaintiffs then brought suit to foreclose their mortgage, joining the attaching creditors as defendants. That cause was tried on the merits and a decree entered in the circuit court holding the mortgage void as against attaching creditors. No appeal was taken therefrom. Plaintiffs then brought this suit to recover from the defendants individually the amount loaned, alleging that the loan was obtained by the fraud and deceit of the defendants and, upon the trial of the cause in the court below, plaintiffs had judgment and decree from which defendants have appealed.

Defendants assign error upon the ground that there was no evidence to support the judgment or decree against defendants and, hence, it was error for the court to refuse to grant defendants' motion for a dismissal of the suit at the close of the testimony and to enter a decree in favor of plaintiffs.

The acts of fraud charged in the complaint may be summarized as follows: That the Peninsula Electric Company was not a corporation; that defendants were not officers thereof and had no authority to act for it at the time the note and mortgage were executed; that no meeting of the stockholders was held or resolution passed authorizing the borrowing of the money or the board of directors to issue the note or mortgage; that

defendants entered into a conspiracy to defraud the plaintiffs, and that, in pursuance thereof, they falsely and fraudulently represented to plaintiffs that they were the owners of the stock of the corporation and that notice of a stockholders' meeting had been given as required by the by-laws, and a meeting held pursuant thereto; that no such meeting was held and no such resolution passed; that defendants were not authorized to borrow money upon the property of the corporation, or to issue a note and mortgage therefor; that defendants represented that they were the officers and directors of the corporation and owned all its stock except one share owned by Frank Kelt, and that they had power to borrow upon the corporate property the sum of $3,500 and to give a note and mortgage therefor, and that, if plaintiffs would lend said sum, they would give plaintiffs a valid corporate note and mortgage on the corporate property; that all said representations were false and fraudulent and were known to be false by defendants at the time of making them; that the by-laws of the corporation provide that the secretary must countersign all notes for over $1,000 and all instruments requiring the seal of the corporation to be affixed thereto; that the note in question was not countersigned by the secretary and that the mortgage was not acknowledged as required by the statute; that plaintiffs relied upon all said representations and believed them to be true and were induced by said representations to make said loan to their damage in the sum of $3,500.

The defendants answered the complaint and denied all the allegations of fraud and alleged affirmatively that the corporation had been duly incorporated and organized under the laws of this state; that it had

made all annual reports to the corporation commissioner and paid all license fees required by law, and that it was legally organized and existing at the time the mortgage was given. These allegations were traversed by the reply and, upon the issues thus joined, the cause was tried and resulted in the decree appealed from.

 Upon the trial the plaintiffs offered in evidence the minute book or corporate records of the Peninsula Electric Company as a part of their case in chief. These minutes show that the Peninsula Electric Company was duly incorporated and organized under the laws of this state on December 10, 1920, and that it had maintained its corporate existence and was doing business as a corporation at the time the loan was made and that the moneys borrowed were applied in payment of corporate obligations. It appears from this record that the defendants, L. Lansdon and wife, purchased from its former stockholders all the stock of the corporation on August 1, 1923, at which time the former directors and officers of the corporation resigned and these two defendants and one other were elected directors and that Lansdon was elected as president and his wife as vice president and treasurer of the corporation, and that they have continued to act as such directors and officers and to transact the business of the corporation since that time; that L. Lansdon owns all the issued stock of the corporation except two shares, one of which is owned by Mrs. Lansdon, the other by Frank Kelt, who is also a director and the secretary of the corporation. It also appears from the certificate of the corporation commissioner of this state that said corporation "filed all annual reports up to and including June 30, 1927, and paid all

license fees up to and including June 30, 1928.'' It also appears from the evidence that at the time the loan was made L. Lansdon was the president and general manager of the corporation and owned all its capital stock except the two shares referred to and that the two Lansdons and Kelt constituted the board of directors. The corporate record fails to show that either of said last named directors took and subscribed an oath as director as prescribed by statute, although Lansdon testified that such oath was taken. But, whether they did subscribe to such oath or not, the evidence clearly shows, and it is undisputed, that Lansdon continued to act as one of the directors and as president and general manager of the corporation and that his wife continued to act as a director and as vice president and treasurer of the corporation and was so acting at the time the loan was made, although she testified that she did not handle any of its funds. Because of the failure of the record to show that the oath of director was taken by defendants, plaintiffs contend that defendants were not qualified to act for the corporation, nor to execute a note and mortgage on its behalf and, therefore, the note and mortgage were fraudulent and void. Their failure, if there was such failure, to subscribe to the oath of office of director, so far as the rights of third parties are concerned, could not affect the validity of a contract entered into by them on behalf of the corporation while assuming to be such officers. Third parties contracting with a corporation which has been once duly incorporated and organized under existing law are not required to inquire, before dealing or contracting with such corporation, whether the directors of the corporation have taken the prescribed oath or not. As to the validity of contracts entered into by

third parties with the corporation, it is wholly immaterial whether such oath was taken or not, for the failure.to take the oath, if there was such failure, was a mere irregularity or omission which would not render the contract void or make the stockholders of the corporation, or its officers, personally liable thereon. See 1 Cook on Corporations (4th Ed.), § 234.

In *Cahall v. Citizens Mutual Building Association,* 61 Ala. 232, the court held:

"* * * whoever contracts with a corporation, in the use of corporate powers and franchises, and within the scope of such powers, is estopped from denying the existence of the corporation, or inquiring into the regularity of the corporate organization, when an enforcement of the contract, or of rights arising under it, is sought."

Again, in 2 Thompson on Corporations (2d Ed.), § 1952, the author says:

"* * * where a charter gives to individuals a corporate capacity upon the performance of certain acts, a person contracting with these individuals, by their corporate name, is precluded from denying the performance of those acts."

Again, in 14 C. J., p. 248, the author says:

"* * * One who sues an alleged corporation as such thereby necessarily admits that it is a corporation, and is estopped to deny its corporate existence either in that action, or in a subsequent action against the members or corporators on the same liability based upon the ground that the corporation was not legally organized."

Again, in *Gow v. Collin, etc., Lumber Co.,* 109 Mich. 45 (66 N. W. 676), the court said:

"The complainants seek to have the corporation known as the Collin & Parker Lumber Company de-

clared invalid and void, and its stockholders held to be partners, and liable for the indebtedness due the complainants. Are the complainants in a position to make that claim and to seek that relief? The company, in form, was duly incorporated, was recognized by the public authorities, and filed its annual reports, and did business as a corporation. The complainants dealt with it as a corporation, and accepted its mortgages, made as a corporation. In the case of *Glass-Beveling Co. v. Bulkley*, 107 Mich. 447 (65 N. W. 291), it was held that, where an association was recognized by the public authorities as a duly organized corporation, and did business and filed its annual reports as such, a creditor who dealt with it as a corporation can not attack its corporate existence, and hold its stockholders liable as partners. See *Swartwout v. Railroad Co.*, 24 Mich. 389; *Bank v. Stone*, 38 Mich. 779, and cases there cited.''

■ Under the foregoing authorities, plaintiffs, having sued the Peninsula Electric Company in a former suit for the foreclosure of the mortgage and that suit having been tried and determined on the merits, are estopped to sue the officers of the corporation in a subsequent action on the same liability.

■ Plaintiffs' principal contention grows out of the fact that the by-laws of the corporation provide that the secretary ''shall countersign all promissory notes and documents requiring the affixing of the corporate seal, but he shall sign no such note or document or affix the corporate seal to any instrument, except stock certificates, unless thereto previously authorized by the board of directors,'' and that ''all notes given by it shall be previously authorized by the directors and signed by the president and secretary.'' The secretary did not sign the note in question. Because of this fact, plaintiffs contend that the note is invalid and unenforceable.

As was said by the court in *Flint v. Pierce,* 99 Mass. 68 (96 Am. Dec. 691):

"The office of a by-law is to regulate the conduct and define the duties of the members toward the corporation and between themselves. So far as its provisions are in the nature of contract, the parties thereto are the members of the association, as between themselves; or the corporation upon the one side, and its individual members upon the other. The right of any third party, stranger to the association, to establish a legal claim through such a by-law, must depend upon the general principle applicable to express contracts."

or as said by Thompson:

"* * * The function of a by-law is to prescribe the rights and duties of the members with reference to the internal government of the corporation, the management of its affairs and the rights and duties existing between the members inter se."

and it

"is of such a peculiar nature and so much a part of the corporation law that it enters into the contract between the corporation and the members with reference to the particular subject covered by such by-law": 1 Thompson on Corporations (2d Ed.), § 975.

In section 982, the same author, after stating that there is an analogy between by-laws and municipal ordinances, says:

"* * * ordinances are local laws enacted by public officers under legislative authority, and bind all within the municipality, strangers as well as residents, and with or without their consent; while by-laws are rules prescribed by the members of a private corporation and have no binding force upon any one except by express or implied assent."

In section 1056, he says:

"* * * It may be stated as a rule that by-laws enacted solely for the benefit of the corporation confer no rights or obligations upon third persons, and do not affect any contracts made by them with the corporation without knowledge of the by-laws."

Also, to the same effect see 1 Machen on Modern Law of Corporations, § 736; 2 Cook on Corporations (4th Ed.), § 725; 14 C. J., pp. 346, 347; 1 Joyce on Insurance, § 53.

 Members of a corporation are, as a general rule, chargeable with knowledge of its by-laws and can not plead ignorance of them to avoid their operation: 14 C. J., p. 347. But third persons are not bound to know of them: 2 Cook on Corporations (4th Ed.), § 725; 1 Machen on Modern Law of Corporations, § 736.

"A party contracting with a corporation," says Cook, "is not bound to know of restrictions in the by-laws as to the method of authorizing and executing contracts, nor is he bound to take notice that a quorum of the directors was not present when the act was authorized": 2 Cook on Corporations (4th Ed.), § 725.

 Officers intrusted with the management of the corporate business are general agents and private restrictions imposed by the corporation are immaterial against third persons acting on the faith of the agency: *Grafius v. Land Co.*, 3 Phila. 447. The regular execution of the corporate powers will be conclusively presumed in favor of bona fide holders: *Fountaine v. Carmarthen Ry.*, L. R. 5 Eq. 316. A by-law requiring contracts to be signed by a certain officer does not invalidate a contract signed by another officer, if the party contracting had no knowledge of the by-law: *Smith v. Martin, etc., Co.*, 64 Hun. 639 (19 N. Y. Supp. 285).

 Plaintiffs also contend that the mortgage is invalid because the acknowledgment contained thereon is not in the form prescribed by the statute. Our statute provides that mortgages of personal property shall be executed, witnessed and acknowledged as are conveyances of real property: § 54-201, Oregon Code 1930.

It also provides that deeds conveying real property, or any interest therein, situate within this state and executed therein, shall be signed by the grantors and acknowledged before one of the officers designated in the statute, and that the officer taking such acknowledgment shall indorse thereon a certificate of the acknowledgment and the true date of making the same, under his hand: § 63-111, Oregon Code 1930. These two sections were complied with for the acknowledgment was taken in the manner thus provided but the provisions of section 63-118 were not complied with. That section requires that the certificate of acknowledgment of an instrument by a corporation shall be substantially in the form set forth therein. The failure to prepare the acknowledgment substantially in the form provided by the statute was the fault of the person who prepared it, and his failure to conform to the requirements of the statute would not make the officer executing the instrument for and on behalf of the corporation liable individually to the person taking the conveyance. It was as much the duty of the person to whom the conveyance was made to see that it was a legal conveyance and was executed according to the requirements of the statute as it was of the corporation executing it. There is no provision in our statute making a chattel mortgage given by a corporation and not acknowledged, or, if acknowledged, not in the form provided by the statute, invalid or unenforceable between the parties or persons charged with knowledge of its existence. Nor is there any rule of law known to us which would make an officer of a corporation acknowledging a conveyance on behalf of the corporation personally liable merely because the acknowledgment made by the officer, authorized by statute to make the acknowledgment, was defective in form.

Another point urged by plaintiffs is that Lansdon was not president of the corporation at the time the mortgage was given. The minute book of the corporation introduced by plaintiffs as a part of their case shows that he was elected as a director of the corporation at the regular annual stockholders' meeting in January, 1924, and each year thereafter up to and including January, 1926, and that he was again elected director at a special meeting of the board of directors held on the 15th day of January, 1927. The minutes of that so-called directors' meeting show that the three persons, who together owned all the stock of the corporation, were present and participated in the meeting, and that Lansdon received the unanimous vote of all the persons present for the office of director and at the same meeting was elected president of the corporation. The by-laws provide that a director of the corporation and the officers thereof "shall hold office until their successors are elected and qualified." There seems to have been no meeting of the stockholders held subsequent to January 15, 1927, and hence, under this provision of the by-laws, the former officers continued to hold office although no stockholders' meeting was held in January, 1928. But even if it should be assumed that Lansdon was not an officer de jure, he was in any event a de facto officer and no more liable than he would have been if he had been an officer de jure. As said in 2 Thompson on Corporations (2d Ed.), § 1448: "On general principles it would seem that, generally, officers de factor are no more personally liable than officers de jure."

We can find no evidence in this case which in any way supports the decree appealed from and this requires a reversal.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.