MARTIN v. MILLER.

BEAN v. SAME.

FOX v. SAME.

1. CONTRACTS—WRITTEN MEMORANDUM—PAROL EVIDENCE.
   Generally, parol evidence is not admissible to vary the terms of a written contract, but where the written memorandum does not contain the entire contract between the parties, prior and contemporaneous agreements and conversations may be shown in order to prove what the whole contract is.

2. SAME—PARTLY IN WRITING AND PARTLY IN PAROL—QUESTION FOR JURY.
   A contract which is not required by the statute of frauds to be in writing to be binding and which is partly in writing and partly parol is regarded as a parol agreement and provable by oral testimony, it being for the jury to determine from the whole testimony what the terms of the contract are.

3. CORPORATIONS—STOCK PURCHASE—LOAN—EVIDENCE.
   Evidence produced in actions to recover for alleged purchase price of stock in insolvent corporation which had been oper-

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 20 Am Jur, Evidence § 1135.
[2] 12 Am Jur, Contracts §§ 22, 60.
[3, 5–7] 20 Am Jur, Evidence § 1109.
[8] 13 Am Jur, Corporations § 1049 et seq.
[9–11] 13 Am Jur. Corporations § 877.
[12] 39 Am Jur, New Trial §§ 13, 131, 201.

ating a dairy *held,* sufficient to support jury's finding that the money plaintiffs had paid was in the nature of a loan to the dairy.

4. PRINCIPAL AND AGENT—CONSTRUCTIVE NOTICE OF PRINCIPAL.

Plaintiff father had constructive notice of use to which money paid defendant was to be put, where he selected his son, the treasurer of dairy to whose milk producers money was paid in order to continue operation, as agent for paying the money.

5. CORPORATIONS—PURCHASE OF STOCK—LOAN—RECEIPTS.

Issue as to whether money paid defendant by plaintiffs was to be used to pay farmers for milk they had sold dairy corporation and to enable dairy to continue operations or whether it was for the purchase of stock in the dairy was properly submitted to the jury in actions by plaintiffs to whom receipts were issued reciting money was for stock.

6. CONTRACTS—EVIDENCE—RECEIPTS—SALES OF STOCK.

Admission of evidence for purpose of showing all of the terms and conditions of the contract between the plaintiffs who paid money to defendant and defendant who distributed it to farmers who had furnished milk to dairy was not error, where receipts given for payments made each recited money was for stock or on stock account but did not include many details usually included in contracts for sale of stock.

7. CORPORATIONS—MONEY RECEIVED.

Money received by defendant which he paid to farmer milk producers, creditors of dairy corporation, *held,* to have been received by him with approval and consent of corporate officers elected and as a *de facto* officer of the corporation.

8. SAME—LOAN TO OFFICER—PERSONAL LIABILITY.

Money loaned to person, as the officer of a corporation, would not create in him personal liability therefor.

9. SAME—DE FACTO OFFICERS—DE JURE OFFICERS.

The liability of a *de facto* officer of a corporation is no greater than if he was a *de jure* officer.

10. SAME—CREDITORS—DE FACTO OFFICERS.

Creditors of a corporation have no right to inquire into the validity of acts of *de facto* officers under circumstances under which there could be no inquiry if the officers were *de jure* officers.

11. SAME—DE FACTO OFFICERS—ELECTIONS.
   Plaintiffs who paid money to defendant, as a *de facto* officer of a
   dairy corporation, cannot question the election of the officers
   in actions against him to recover such payments.

12. NEW TRIAL—DISCRETION OF COURT.
   The granting of a new trial lies within the sound discretion of
   the trial judge.

13. APPEAL AND ERROR—VERDICTS—EVIDENCE—LOANS TO CORPORA-
TION—SALES OF STOCK.
   Verdicts for defendant in actions to recover payments made to
   him, which constituted a finding that payments were made to
   him as a *de facto* officer of the corporation and as a loan to
   the corporation rather than a sale of stock by him *held*, not
   contrary to the great weight of the evidence presented.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted January 6, 1953.  Docket Nos. 3–6, Calen-
dar Nos. 45,500–45,503.)  Decided April 13, 1953.

Separate actions by Mauro Martin and another,
Mauro Martin, Martin Bean and Joseph Fox against
Roman L. Miller for damages under blue sky law and
in trespass.  Cases consolidated.  Verdicts and judg-
ments for defendant.  Plaintiffs appeal.  Affirmed.

*Charles Upton Shreve,* for plaintiffs.

*Howard & Howard* (*Mark Howard,* of counsel),
for defendant.

SHARPE, J.  Plaintiffs, Mauro Martin and Joseph
Martin, Mauro Martin, Martin Bean and Joseph Fox,
commenced separate actions in the Wayne circuit
court, against defendant, Roman L. Miller.  These
actions were consolidated for trial.  In each case a
jury returned a verdict in favor of defendant, upon
which judgments were entered.  The facts forming
the basis of the issues involved are as follows:  In
April, 1948, the Belcrest Dairy, Incorporated, of

Detroit, Michigan, was insolvent and had checks outstanding in the amount of $4,676.12, which had been returned by the bank for insufficient funds. These checks were made payable to various milk producers in the vicinity of Croswell, Michigan. Defendant, Roman L. Miller, and his wife were the owners of a retail gasoline service station in the vicinity of the Belcrest dairy. The dairy was indebted to defendant in an amount of approximately $2,500 for oil, gasoline and services furnished to the dairy. A meeting of creditors was called to meet at the dairy on April 13, 1948. The farmers who had supplied milk to the dairy were represented by an attorney. The attorney notified the dairy officials that no more milk would be furnished until the bad checks totaling between $4,000 and $5,000 were paid. Another meeting was called a few days subsequent to the April 13th meeting, at which time a discussion was had as to ways and means for raising money to pay the farmers and help get the dairy operating again. It was informally decided that defendant, Roman L. Miller, be selected chairman of the creditors' committee and that any money raised be turned over to Miller. At this meeting Tom Economy orally resigned as president, and the following officers were "elected": President, Roman L. Miller; Treasurer, Mauro Martin; and secretary, Geraldine Woodson. A few days subsequent to this meeting plaintiff, Mauro Martin, brought defendant a check for $2,000, payable to defendant as trustee. Defendant was unable to deposit this check as he did not have a trustee account in the bank. A check was then made out to defendant without the word "trustee" on the check. Mauro Martin also paid defendant $1,000; Martin Bean paid defendant $200; Joseph Fox paid defendant $500; and Joseph Martin paid $2,000. Defendant gave receipts as follows:

"5-13-48
Recd of Martin Bean two hundred and no/100
$200 stock acct
Belcrest Dairy Inc.

ROMAN L. MILLER
Pres"

"May 3, 1948
Recd of Joseph Fox
19198 Harlow
Five hundred and no/100
$500 for stock account
·    Belcrest Dairy Inc.

ROMAN L. MILLER
Pres"

"No. . . . . . . . . . . . . . .    4–19         1948
Two thousand dollars . . . . . . . . . . . . . . . 100 dollars
Received of Mauro Martin
200 shares of stock in Belcrest
Dairy Co Inc for Joseph Martin
$2000

/s/  ROMAN L. MILLER"

"No. . . . . . . . . . . . . . . . 4–22         1948
Received of Mauro Martin One thousand dollars
for 100 shares of stock in Belcrest Dairy
$1000

BELCREST DAIRY
gW"

The money collected by defendant was used to pay the bad checks previously issued. On October 28, 1948, plaintiff, Mauro Martin attempted to rescind the sale by giving defendant notice which contained the following:

·  "1. Said transaction was a fraudulent transaction on your part and you have been guilty of gross fraud and misrepresentation.

"2. Because no stock certificates were ever delivered by you or anyone else.

"3. Because the Belcrest Dairy Company was insolvent at the time of the sale.

"4. Because you do not appear of record as the ·owner of any such stock.

"5. Because you have not a license as a salesman.

"6. Because such stock is not authorized to be sold by the Michigan corporation and securities commission. Demand is hereby made for payment of $3,000 paid to you with interest at 5% from April 22, 1948."

The other plaintiffs gave similar notices on December 30, 1948.

Separate actions were commenced and the declaration contained 2 counts, one of assumpsit based on the appellee's failure to deliver the stock or return the money, the other on fraud based on the failure of appellee to inform appellants that the stock was not registered, and that he was not authorized by the corporation to sell the stock and that he had unlawfully converted the funds to his own personal and private use. The appellee answered admitting receipt of the money, that the corporation was never authorized to sell the stock and that he was not a licensed stock salesman, and the affirmative defense alleged that it was not a stock transaction, but that the money was loaned to the corporation.

The cause came on for trial and over the objections ·of plaintiffs, defendant was permitted to introduce in evidence certain exhibits which represented checks and disbursements to farmers in or near Croswell, and other expenses showing how the money collected was disposed of.

At the conclusion of all testimony, plaintiffs requested the court to instruct the jury as follows:

"(1) If you find that the defendant agreed to sell and deliver to plaintiffs shares of stock in a corporation, it being undisputed that the defendant failed to deliver any such shares and that the plaintiffs rescinded such transactions, then you must find for the plaintiffs in the full amount of their claims together with interest at 5% per annum.

"(2) If you find that the defendant agreed to sell and deliver to the plaintiffs shares of stock in a corporation, it being further undisputed that the sale of said shares of stock was not authorized by the Michigan corporation and securities commission and the defendant was not licensed to sell stock, then you must also find for the plaintiffs in the full amount of their claims together with interest at 5%.

"(3) If you find that the transaction between these plaintiffs and the defendant was one whereby the plaintiffs agreed to loan money to the Belcrest Dairy, Inc., and if you further find that the defendant, Roman L. Miller, was not authorized by the said corporation to borrow money on its behalf, then you must find for the plaintiffs in the full amount of their claims together with interest at 5%.

"(4) If you find that the defendant agreed to sell and deliver stock to the plaintiffs, but that at the time he made such agreement and secured the money from the plaintiffs he had no intention of delivering stock but instead considered the transaction as a loan to Belcrest Dairy, Inc., then you must find that the defendant, Roman L. Miller, was guilty of fraud, and that the plaintiffs are entitled to recover against him because of such fraud the full amount of their claims together with interest at 5%.

"(5) If you find that the defendant agreed to sell and deliver stock to the plaintiffs and that he failed to disclose to the plaintiffs that the sale of such stock was not validated by the Michigan corporation and securities commission and that the defendant was not licensed to sell stock, and if you further find that the plaintiffs, or some of them, had no knowledge that the said stock was not so validated and that the defendant was not so licensed, then in respect to the plaintiffs that had no such knowledge you must find the defendant guilty of fraud, and render a verdict in favor of such plaintiffs in full amount of their claims together with interest at 5% because of such fraud."

The trial court gave the following instructions to the jury:

"If you find, members of the jury, that the transaction between the plaintiffs, and the defendant was one whereby the plaintiffs agreed to loan money to the Belcrest Dairy, Incorporated; and if you further find that the defendant, Roman L. Miller, was not authorized by the corporation to borrow money on its behalf, then, members of the jury, I charge you that your verdict will be for the plaintiffs in this case.

"Equally so, I charge you that if you find that the defendant agreed to sell and deliver stock to the plaintiffs, but that at the time he made such agreement and secured the money from the plaintiffs he had no intention of delivering stock but instead considered the transaction as a loan to the Belcrest Dairy, Incorporated, then I charge you, members of the jury, that your verdict will be for the plaintiffs, as against the defendant.

"There is no evidence in this case that the defendant was authorized by the Belcrest Dairy company to make the loans in question on behalf of the corporation.

"On the other hand, members of the jury, if you find that the plaintiffs have failed to sustain their contention here and you find that the defendant here carried out the agreement that he had with the plaintiffs, with the full knowledge of the plaintiffs that the moneys were to be used in the manner that he used them, and that he in no manner defrauded them or deceived them in the transaction, but if it is as he claims to bring the corporation back into existence again and to satisfy the creditors, then, members of the jury—if you find that that was the agreement, that the plaintiffs had knowledge of that, and entered into the transaction with the understanding as stated, then your verdict here should be for the defendant of no cause of action."

The jury returned verdicts in favor of defendant, and on January 22, 1951, judgments were entered on

said verdicts. On February 8, 1951, plaintiffs made motions for a new trial for the following reasons:

"(1) Because the contract between the plaintiff and defendant was in writing and clearly expressed the agreement of the parties that the defendant was to deliver stock to the plaintiff and that the only defense of the defendant was that said transaction was a borrowing of money and the trial judge was in error in allowing parol evidence to vary the terms of a written instrument and to testify that the written contract to deliver stock was in fact a borrowing.

"(2) Because the judge erred in not charging the jury that even if they believed the evidence of the defendant that the transaction was one of borrowing money that this did not constitute a defense at law inasmuch as the evidence clearly showed that the defendant, Roman L. Miller, was not authorized legally to borrow money on behalf of the corporation.

"(3) Because the trial judge charged that Mauro Martin knew the creamery was closed and the creamery was not operating and did not further charge that that was one of the conditions under which the money was paid for stock that the creamery was to be reopened and a new organization to be set up and that such a charge standing alone was misleading and prejudicial to the plaintiff.

"(4) That the verdict was against the great weight of the evidence.

"(5) That the trial judge was in error in allowing evidence of the payment of checks of the farmers and of other moneys paid by the defendant as such evidence was of no concern to the parties in this case and was prejudicial to the plaintiff and that the evidence should have been confined solely to the transaction between the parties.

"(6) Because the verdict of the jury was a sympathetic verdict and not based upon any evidence before them.

"(7) Because the trial judge was in error in allowing the introduction of exhibits of the defendant that were prejudicial and irrelevant.

"(8) Because the trial judge refused to charge the jury as requested by the plaintiff that the transaction violated the Michigan so-called blue-sky laws* and was illegal and under such statutes of the State of Michigan it was provided that the plaintiff was entitled to the return of his money inasmuch as the stock was never authorized to be issued and the defendant was not a licensed stock salesman and that selling stock to 4 people as the evidence clearly showed was a direct violation of said statutes."

This motion was denied and plaintiffs appeal and urge that the trial court was in error in allowing parol evidence to vary the terms of the written memoranda of the transaction entered into between the parties in this cause. In coming to our conclusions we have in mind that at the time of the transfer of the moneys involved, the dairy was in a bankrupt condition; that defendant Miller was not authorized to sell stock in the company, nor was the sale of such stock validated by the Michigan corporation and securities commission, but that the moneys received by Miller were used to pay farmers for prior deliveries of milk. It is urged by defendant Miller that the written memoranda did not contain the entire contract between the parties, and that parol evidence was admissible to show the entire contract. It is a general rule that parol evidence is not admissible to vary the terms of a written contract, but where a written memorandum or agreement does not contain the entire contract between the parties, prior and contemporaneous agreements and conversations may be shown in order to prove what the whole contract

* CL 1948, § 451.101 *et seq.* (Stat Ann and Stat Ann 1947 Cum Supp § 19.741 *et seq.*).—Reporter.

is. See *Brady* v. *Central Excavators, Inc.,* 316 Mich 594.

The record shows that Mauro Martin represented the employees of the dairy; that at a meeting held a few days after April 13, 1948, a discussion was had as to ways and means of raising money to start the dairy. At this meeting Mauro Martin, who had been an employee of the dairy and knew its financial condition, informally agreed with others that defendant, Roman L. Miller, should hold any money collected in an account in his own name. At this meeting Mauro Martin was elected treasurer of the dairy. There also was some discussion to the effect that the money collected would be used to pay the farmers. Following this meeting, and on April 19, 1948, Mauro Martin paid defendant, Roman L. Miller, the sum of $2,000 for "stock" for Joseph Martin; and that on April 22, 1948, plaintiff, Mauro Martin, paid defendant, Roman L. Miller, $1,000 for "stock" for himself, and that Mauro Martin was the agent for Joseph Martin in the solicitation of the $2,000 paid by Joseph Martin.

On May 13, 1948, plaintiff Martin Bean paid defendant, Roman L. Miller, the sum of $200 and received a receipt for "stock acct—Belcrest Dairy Inc.," and signed by Roman L. Miller, President. Martin Bean had never been employed by the dairy, but knew that it was not operating and was having financial difficulties.

On May 3, 1948, plaintiff, Joseph Fox, paid defendant, Roman L. Miller, the sum of $500 "for stock account." Plaintiff Fox was never employed by the dairy, he did not attend any meeting of the creditors of the dairy, but knew that it was not operating when he paid the money to Roman L. Miller. In the case of Mauro Martin there was evidence presented from which a jury could find as a fact that Mauro Martin knew that he was paying money to the dairy for the

purpose of paying the suppliers of milk, and to re-establish the dairy. There is also evidence from which a jury could find that Mauro Martin acted as an agent for his father, Joseph Martin.

In the case of Martin Bean, the receipt shows that $200 was paid for "stock account." In the case of Joseph Fox, the receipt shows "$500 for stock account."

In the cases at bar, it is the theory of defendant, Roman L. Miller, that the written receipt does not contain the whole of the contract between the parties. In *Stahelin* v. *Sowle,* 87 Mich 124, we said:

"It is only where the contract is complete in itself, and shows upon its face that it embodies the terms of the agreement, that parol testimony which tends to vary or contradict the writing is excluded, as well as all previous negotiations and understandings. Where, however, a contract which is not required by statute to be in writing to be binding is partly in writing and partly parol, the whole is regarded as a parol agreement, and may be proved by oral testimony, and the jury are to determine from the whole testimony what the terms of the contract are."

See, also, *Brady* v. *Central Excavators, Inc., supra.*

In our opinion there was evidence introduced from which a jury could find that the money paid was in the nature of a loan to the dairy. It is also a fact that Joseph Martin had constructive notice of these facts, by reason of selecting Mauro Martin as his agent. The trial court was not in error in submitting to the jury the issue of whether the money collected by the defendant, Roman L. Miller, was to be used to pay the farmers and to continue the further operation of the dairy, or whether it was for the purchase of stock in the dairy.

In the cases of Bean and Fox, the receipt for money paid shows "for stock account." It clearly appears that the parties did not include many of the

details which are usually included in contracts for the sale of stocks. It was not error to admit evidence for the purpose of showing all of the terms and conditions of the contract between the parties.

It is urged that defendant, Roman L. Miller, had no authority to borrow money on behalf of the corporation. It appears that a meeting of the creditors of the dairy was held April 13, 1948, at which time Tom Economy, president of the dairy, suggested that he would be willing to loan money to the dairy and requested the creditors to do likewise in order to start the dairy. It was at this meeting or a subsequent meeting that all agreed to have defendant, Roman L. Miller, chairman of the creditors' committee. At this time Tom Economy resigned as president of the corporation and new officers were selected.

It does not appear that any of the plaintiffs prior to the April 13, 1948, meeting were officers or stockholders of the dairy. At the time the money was paid to defendant, Roman L. Miller, officers had been elected and the money received with their approval and consent.

At the time defendant, Roman L. Miller, received the money he was a *de facto* officer of the corporation. As a *de facto* officer he had authority similar to a *de jure* officer. See 2 Fletcher Cyclopedia Corporations (Perm ed), p 156. If the money was loaned to defendant, Roman L. Miller, as an officer of the corporation he would not be personally liable. See *Cummings* v. *Steel Built Homes, Inc.*, 313 Mich 445. His liability as a *de facto* officer is no greater than if he was a *de jure* officer. See *Doehler* v. *Lansdon*, 135 Or 687, 690 (291 P 392, 298 P 200). Moreover, plaintiffs as creditors of the corporation have no right to inquire into the validity of acts of *de facto* officers under circumstances under which there could be no inquiry if the officers were *de jure* officers. See *Tufts*

v. *Waltham Auto Bus Co.*, 273 Mass 390 (173 NE 537). Nor can plaintiffs question the election of such officers in the proceeding. See *Bruun* v. *Cook,* 280 Mich 484.

It is also urged that the verdicts of the jury were against the great weight of the evidence and that the trial court was in error in failing to grant a new trial for that reason.

The granting of a new trial lies within the sound discretion of the trial judge. See *Chapin* v. *Cullis,* 299 Mich 101; and *Brackins* v. *Olympia, Inc.,* 316 Mich 275 (168 ALR 890).

The principal issue in this case was whether the money was loaned to Miller as a *de facto* officer of the corporation or whether Miller sold stock in the the corporation without authority to do so. Under the circumstances of this case, Miller would be personally liable if he sold corporation stock to the plaintiffs. This issue was fairly presented to the jury. The result of their verdicts is that plaintiffs loaned money to the corporation. There is competent evidence to support such verdicts. We do not find that the great weight of evidence is contrary to the verdicts. In our opinion the trial court was not in error in denying a new trial.

The judgments are affirmed, with costs to defendant.

Dethmers, C. J., and Adams, Butzel, Carr, Bushnell, Boyles, and Reid, JJ., concurred.