*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFERY C. MERTZ,

        Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

        Respondent-Appellee.

UNPUBLISHED
June 13, 2024

No. 365480
Tax Tribunal
LC No. 21-002888-TT

Before: MALDONADO, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Petitioner appeals by right the Tax Tribunal's order granting summary disposition under MCR 2.116(C)(10) in favor of respondent and denying his motion for summary disposition concerning his petition challenging respondent's imposition of officer liability for unpaid taxes. See MCL 205.27a(5). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Howard Finishing, LLC, described by petitioner Jeffery C. Mertz as presently "defunct," was a limited-liability company that sold functional and decorative coatings for automobile parts. An amended and restated operating agreement established petitioner's father, Richard C. Mertz, and another individual, James E. Grimes, as members of Howard Finishing, with ownership interests of 80% and 20%, respectively. Richard served primarily as the financial partner for various business enterprises, and Grimes acted as the operating partner.

In 2009, petitioner began working for Howard Finishing as a production shift manager. In 2010, petitioner became the director of new business development, reporting to James M. Grimes—James E. Grimes's son—who held the title of vice president of sales. Petitioner's duties in that new role included obtaining new business and analyzing existing processes to make them more efficient and profitable. Petitioner joined the company in the wake of the 2008 economic crisis that severely impacted the automotive industry and its suppliers, and petitioner's role was intended to help weather that crisis. But in 2014, it became apparent to Howard Finishing's ownership that the company would need to be sold, and petitioner's duties were expanded to include taking steps to prepare for that sale of the company.

According to petitioner, Howard Finishing's controller resigned in 2014, leading to petitioner taking on that role, but only intending to hold it temporarily until the company hired a new controller, which never happened. Petitioner testified initially that his service in this role was limited to ensuring entry of data into various accounting software—though he acknowledged that this was in service to the company's "fiduciary responsibility"—and providing financial information from that software to Howard Finishing's owners. But petitioner acknowledged that he and Grimes were the only employees with any responsibility for accounting matters and that he was only one of two employees authorized to sign corporate checks.

After beginning as controller, petitioner signed withholding-tax returns that Howard Finishing filed with respondent Department of Treasury. Petitioner signed a January 2015 monthly withholding-tax return in February 2015, which required that the signer be either the taxpayer, or the taxpayer's official representative, who in turn was required to be "Owner, Officer, Member, Manager, or Partner." Petitioner signed with the title "Controller." The form provided that the signature certified "under penalty of perjury that this return is true and complete to the best of my knowledge."

Petitioner also signed an annual withholding-tax return for 2014 in March 2015, with his title stated as "Officer." Petitioner acknowledged that the signatures on all return forms in the record were his, and that between 2015 and 2018, no one other than petitioner signed any withholding-tax returns. He also acknowledged that he was the only person at Howard Finishing who was responsible for maintaining the accounting system and providing tax information to Richard and to Howard Finishing's outside accountant.

Howard Finishing did not timely file any required withholding-tax returns for 2016. Petitioner asserted that he "had a good faith basis for believing that Richard Mertz had been filing the appropriate tax returns." But petitioner's testimony revealed that his role beginning in 2016 was that of "disaster management specialist," because the business was in "rough shape," and that part of that role was "trying to make cash more available to pay our taxes, which were in arrears." Several times through 2016, petitioner made cash transfers from his personal bank account into Howard Finishing's account, which records show multiple incoming wire transfers over several months from petitioner's personal account totaling $825,000. Petitioner characterized these payments as a loan and received several payments of $100,000 that he characterized as loan repayments. He continued in his role as controller, including signing checks issued by Howard Finishing, throughout 2016.

In June 2017, Howard Finishing appointed petitioner president, and Richard resigned as manager of the LLC and appointed petitioner to replace him. Petitioner conceded that, when he became president and manager, he was the person responsible for ensuring that Howard Finishing paid its taxes. Sometime after petitioner's appointment as president and manager, he undertook preparations for the sale of Howard Finishing's assets. Petitioner testified that he filed all of the missing 2016 withholding-tax returns upon discovering a "significant lack of reporting," responsibility for which he attributed to Richard. Except for the January 2015 withholding-tax return, Howard Finishing filed none of the required 2015 or 2016 withholding returns until 2017, all of which petitioner then signed. However, Howard Finishing did not fully pay the taxes due under those returns and thus had an outstanding tax balance due.

In 2017, Howard Finishing agreed to sell its location in Roseville, Michigan to Beacon Park Finishing, LLC. In anticipation of the sale, Howard Finishing filed with respondent an application for a "tax clearance," which petitioner signed. The form indicated that "Howard Finishing was selling 40% of its assets," but did not indicate that any sale has been completed, and the section identifying a purchaser was blank. The form included a section for designating a third party to receive tax-clearance information, and Howard Finishing named Garrett Kanehann for that purpose. The document did not otherwise indicate what Kanehann's affiliation with the transaction was. Respondent issued a letter in response to this request, explaining that it was being sent for the purpose of creating a tax escrow in the event of a sale of the business or its assets, and that Howard Finishing owed several hundred thousand dollars in sales, use, and withholding taxes for 2014, 2015, and 2016. The letter closed by instructing petitioner to submit a new tax-clearance request once the business or assets were sold, which Howard Finishing never did.

In November 2017, respondent issued a number of "Intent to Assess" forms assessing Howard Finishing for unpaid withholding tax. In January 2018, Howard Finishing entered into an installment agreement under which it agreed to pay just over $500,000 in unpaid taxes in escalating monthly installments from January 2018 through March 2023. In June 2018, respondent issued Howard Finishing a default notice after Howard Finishing apparently failed to remit a monthly installment payment. After an informal conference, respondent ultimately concluded that petitioner was liable as a corporate officer for the unpaid taxes, and for the aggregate amount of more than $229,000, plus interest, for the unpaid 2016 taxes. In June 2018, petitioner resigned his position with Howard Finishing, and Richard replaced him as manager and president.

Petitioner subsequently filed a petition in the Tax Tribunal challenging the imposition of liability for the unpaid 2016 withholding taxes. The parties subsequently filed cross-motions for summary disposition under MCR 2.116(C)(10). The Tax Tribunal issued a written opinion and order granting respondent's motion for summary disposition and denying petitioner's motion. The Tax Tribunal concluded that respondent made a prima facie showing that, on the basis of his signing of tax-return forms, petitioner was an officer of Howard Finishing because petitioner was the only person to sign such forms after becoming controller and because petitioner was "intimately involved with financial matters of Howard Finishing." With respect to respondent's purported failure to first assess Howard Finishing's successor, Beacon Park Finishing, the Tax Tribunal concluded that respondent had no basis for knowing there was a successor to assess until after it had assessed petitioner, and that it then assessed the successor purchaser as well, thus exercising its prerogative to assess multiple persons. Petitioner moved for reconsideration, which the Tax Tribunal denied, and this appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews a decision of the Tax Tribunal to determine whether the tribunal erred in applying the law or adopted a wrong principle." *Thrifty Royal Oak, Inc v Royal Oak*, 208 Mich App 707, 711; 528 NW2d 205 (1995). "An agency's interpretation of a statute is not binding and may not conflict with the plain meaning of the statute, but it is entitled to respectful consideration." *Andersons Albion Ethanol, LLC v Dep't of Treasury*, 317 Mich App 208, 213; 893 NW2d 642 (2016). But we will "generally defer to the Tax Tribunal's interpretation of a statute that it is delegated to administer." *Thrifty Royal Oak*, 208 Mich App at 711.

-3-

## III.  ANALYSIS

## A.  RESPONSIBLE PERSON

On appeal, petitioner contends that the Tax Tribunal erred when it granted respondent's motion for summary disposition because respondent failed to make a prima facie case that petitioner was a "responsible person."  According to petition, he was not an officer of Howard Finishing when the default occurred and there was no evidence that the failure to pay taxes was either willful or reckless.  We disagree.

When a business entity fails to pay taxes, including withholding taxes, or file returns, any officers, members, or managers of manager-managed limited-liability companies may be held personally liable for the unpaid taxes if found to be a "responsible person."  MCL 205.27a(5). "Responsible person" is defined as

> an officer, member, manager of a manager-managed limited liability company, or
> partner for the business who controlled, supervised, or was responsible for the filing
> of returns or payment of any of the taxes described in [MCL 205.27a](14) during
> the time period of default and who, during the time period of default, willfully failed
> to file a return or pay the tax due for any of the taxes described in subsection (14).
> [MCL 205.27a(15)(b).]

And "willfully" or "willful" is defined as "intentionally or recklessly fail[ing] to file the return or pay the tax."  MCL 205.27a(15)(d).  Under MCL 205.27a(5), the burden is placed on respondent to either put forth prima facie evidence that a person is a "responsible person," or a prima facie case, meaning the submission of evidence that "during the time period of default" the person had the specified position in the business, that the person was responsible for, or had control over, the payment of taxes, and that there was an intentional or reckless failure to make such payment.

Evidence that the person in question signed a withholding-tax return during the period of default, for example, is prima facie evidence that the person is a responsible person:

> The signature, including electronic signature, of any officer, member, manager of
> a manager-managed limited liability company, or partner on returns or negotiable
> instruments submitted in payment of taxes of the business during the time period
> of default, is prima facie evidence that the person is a responsible person.  [MCL
> 205.27a(15)(b).]

Such documents signed and submitted to respondent before the period of default are not, standing alone, prima facie evidence, but can nevertheless become prima facie evidence together with other evidence showing that the person in question was an officer or manager during the time period of default:

> With respect to a return or negotiable instrument submitted in payment of taxes
> before the time period of default, the signature, including electronic signature, on

-4-

that document along with evidence, other than that document, sufficient to demonstrate that the signatory was an officer, member, manager of a manager-managed limited liability company, or partner during the time period of default is prima facie evidence that the person is a responsible person. [*Id*.]

Similarly, evidence of returns signed after the period of default, standing alone, does not constitute prima facie evidence that the signer was a responsible person, but can be used as evidence, together with other evidence, to establish a prima facie case that the signer is a responsible person:

A signature, including electronic signature, on a return or negotiable instrument submitted in payment of taxes after the time period of default alone is not prima facie evidence that the person is a responsible person for the time period of default but may be considered along with other evidence to make a prima facie case that the person is a responsible person. [*Id*.]

In this case, petitioner asserts, and respondent concedes, that petitioner did not sign any of the returns at issue during the 2016 period of default. In 2015, however, petitioner did sign withholding-tax returns for 2014 and 2015, and certified under penalty of perjury that he was an officer of Howard Finishing, using the title "Controller" or "Officer" when signing. Standing by itself, this was not prima facie evidence that petitioner was a responsible person in 2016.

The question, therefore, is whether, aside from petitioner's signature on the tax returns certifying that he was an officer, there is evidence that he was in fact an officer in charge of tax matters when he signed the tax returns in 2015. Both parties rely on the Department of Treasury Revenue Administrative Bulletin ("RAB") 2015-23 in various parts for their arguments. RAB 2015-23, § III, citing *Martin v Miller*, 336 Mich 265, 277-278; 57 NW2d 878 (1953), states that an officer can be "de jure (i.e. legally authorized)" or de facto. Petitioner's position is that he was neither a de jure nor de facto officer when he was appointed controller. He relies on *Hedayat v Dep't of Treasury*, unpublished opinion of the Tax Tribunal, issued April 8, 2011 (Docket No. 355447), for the proposition that only official corporate updates prepared by the taxpaying corporation can establish the status of corporate officer. But *Hedayat* is distinguishable because Howard Finishing was a limited-liability company, not a corporation. Although there are many similarities between the two business forms, corporations are required to follow certain formalities that LLCs are not. For example, a corporation must have bylaws, MCL 450.1231, while LLCs need only file articles of organization, and need not adopt an operating agreement at all. A corporation is also required to have officers—at a minimum a president, secretary, and treasurer, and optionally a board chairperson and one or more vice-presidents, and other officers designated by the corporate bylaws. MCL 450.1531. No statute either requires LLCs to have, or forbids them from having, any officers.

Petitioner also relies on *Huggins v Dep't of Treasury*, unpublished opinion of the Tax Tribunal, issued August 6, 2013 (Docket Nos. 448835, 448836 & 448837), for the proposition that his signatures on the tax returns were mere formalities. In *Huggins*, the petitioner, nominally vice president of accounting for the subject corporation, established that she never had any control of,

supervision over, or responsibility for the filing of tax returns or payment of taxes, and that she signed tax returns at the direction of corporate officers as a matter of convenience. Notably, she had no control over any of the financial operations of her employer, and, unlike petitioner here, had no authority to sign checks. In contrast here, the record here shows that petitioner's role with the company extended well past the role of a simple employee. Petitioner admitted exercising control over financial operations, having testified that he signed virtually every corporate check issued between his appointment as controller and his leaving the company. He also contributed over $800,000 of his own money to the corporation—far more than one might expect a mere employee to contribute to his or her employer. Unlike *Huggins*, there was simply no record evidence to suggest that petitioner was simply acting at someone else's direction.

Petitioner's testimony that he was not an officer during the relevant time was based primarily on his subjective opinion. But he agrees that, when he became president in 2017, he was an officer, even though that position is not listed in the operating agreement. Petitioner stresses that he was not listed as an officer in Howard Finishing's annual filings with the state but, unlike a corporation's annual reports, which must list all members of the corporation's board of directors as well as the president, secretary, and treasurer, see MCL 450.1911, annual limited-liability company filings need not list all, or even any, officers or members. Instead, they are required to specify only the identity of the LLC's resident agent, and be signed by either a manager, or a member if there are no managers. See MCL 450.4207. Petitioner admitted, however, that as soon as he became controller, he was the only person who ever signed or filed withholding-tax returns for Howard Finishing.

And while petitioner downplays his role as "Controller" as a mere data-entry position, his testimony indicated that he was almost exclusively responsible for providing financial information to support both tax payments and business decisions. Moreover, the position of "Controller" is generally considered one with significant control over accounting and financial operations, thus an officer position. *Black's Law Dictionary* (11th ed) defines "controller" by reference to "comptroller," which in turn is defined as "[a]n *officer of a business* or a private, state, or municipal corporation who is charged with duties [usually] relating to fiscal affairs, including auditing and examining accounts and reporting the financial status periodically." (Emphasis added.) All of these considerations, together with the undisputed fact that petitioner signed withholding-tax returns before the period of default, constituted prima facie evidence that petitioner was a "responsible person" with respect to the period of default, and petitioner did not present sufficient evidence to rebut that presumption. With respect to after the period of default, there is no dispute that petitioner became the Howard Finishing's manager and president in June 2017, and petitioner conceded that he would properly be considered a responsible person at least as of that date. With respect to taxes, the record indicates that very little about his duties changed as the result of being explicitly named manager and president. He was still the only person at Howard Finishing to have taken any action with respect to filing or paying the withholding taxes at issue.

Petitioner also argues that there was no evidence that he willfully failed to pay taxes, which the statute defines as knowing that taxes and returns are due but either intentionally or recklessly failing to pay them. MCL 205.27a(15)(d). Here, the taxes at issue were undisputedly not paid, and the record clearly indicated that petitioner knew that the business was required to file returns and pay taxes, yet failed to pay the 2016 withholding taxes. Although petitioner asserts that he believed that Richard was handling the filing of returns and payment of taxes for 2016, he

presented no evidence supporting that assertion. Indeed, undermining that entire premise was petitioner's testimony admitting that he knew that taxes were in arrears and that his duties included trying to resolve the arrearage. It is also clear from his testimony, and Howard Finishing's bank records, that Howard Finishing was paying other debts—including nearly $500,000 against Howard Finishing's loan debt to petitioner himself, all while petitioner admittedly knew that Howard Finishing had unpaid tax liabilities. See MCL 205.27a(15)(d) (" 'Willful' or 'willfully' means the person knew or had reason to know of the obligation to file a return or pay the tax, but intentionally or recklessly failed to file the return or pay the tax."). For these reasons, the Tax Tribunal did not err when it granted respondent's motion for summary disposition on the issue of petitioner's status as a "responsible person."

## B. ASSESSMENT OF PETITIONER BEFORE ASSESSMENT OF THE PURCHASER

Petitioner also argues that the Tax Tribunal erred when it granted respondent's motion for summary disposition because respondent was required to, but did not, first assess Howard Finishing's successor purchaser, Beacon Park Finishing, before assessing petitioner. We disagree.

MCL 205.27a(5) requires respondent to assess a purchaser of a business or a business's assets before assessing a "responsible person," but only if respondent is given information that "clearly identifies" the purchaser and can establish that respondent can collect the entire amount due from the purchaser:

> Before assessing a responsible person as liable under this subsection for the tax assessed to the business, the department shall first assess a purchaser or succeeding purchaser of the business personally liable . . . if the department has information that clearly identifies a purchaser or succeeding purchaser . . . and establishes that the assessment of the purchaser or succeeding purchaser would permit the department to collect the entire amount of the tax assessment of the business. The department may assess a responsible person under this subsection notwithstanding the liability of a purchaser or succeeding purchaser . . . if the purchaser or succeeding purchaser fails to pay the assessment.

MCL 205.27a(1) provides that the purchaser of a business or business's assets "shall escrow sufficient money" to pay any taxes, interest, or penalties due until the seller obtains a tax clearance, which is either a "receipt . . . showing that the taxes due are paid, or a certificate stating that taxes are not due." In this case, the record shows that Howard Finishing did not receive any such tax clearance.

Petitioner's sole basis for asserting that respondent had full knowledge of the identity of the purchaser was the request for tax clearance that Howard Finishing filed in 2017. However, that document neither provided the identity of a purchaser nor otherwise indicated that any sale had actually been completed. See MCL 205.27a(5). Instead, the request simply stated that the tax information could be released by respondent to a third party, Garrett Kanehann, and provided his contact information. The tax clearance form contained no information suggesting that Kanehann was connected with the purchaser, and the actual purchaser, Beacon Park Finishing, was not

named. Accordingly, the 2017 request for tax clearance cannot reasonably be characterized as having "clearly identifie[d]" a purchaser. See MCL 205.27a(5).

Moreover, respondent sent a letter in response, informing Howard Finishing that a tax clearance would not be provided while overdue taxes remained unpaid. It also invited Howard Finishing to submit a new tax-clearance request once all returns were filed, the taxes were paid, and the sale was complete. Because respondent did not know the identity of the purchaser when it assessed petitioner, it did not violate MCL 205.27a. Accordingly, the Tax Tribunal did not err when it granted summary disposition in favor of respondent.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Kirsten Frank Kelly
/s/ James Robert Redford